[No. 00373-4. En Banc.]
Argued February 11, 2003. Decided January 15, 2004.

*In the Matter of the Disciplinary Proceeding Against* NORMAN W. COHEN, *an Attorney at Law*.

746

*Kurt M. Bulmer*, for petitioner.
*Anne I. Seidel*, for the Bar Association.

BRIDGE, J. — Attorney Norman Wolfe Cohen (Cohen) appeals the Washington State Bar Disciplinary Board's (Board) recommendation to suspend him for one year for three counts of misconduct. The Washington State Bar

Association (WSBA) charged Cohen with (I) violation of Rules of Professional Conduct (RPC) 1.3 and 3.2, (II) violation of RPC 1.4(a) and 1.4(b), and (III) violation of RPC 1.15, 1.3, and 1.4. The hearing officer concluded that the WSBA had proved all three counts and recommended restitution to the client, a one-year suspension less any period of time that Cohen served for his suspension for misconduct in another pending disciplinary matter, and a two-year probationary period. The Board affirmed the hearing officer's recommendation to impose a one-year suspension and restitution but refused to consider Cohen's other pending disciplinary matter or to require a probationary period.

Cohen argues that the WSBA failed to prove count III, improper withdrawal from his client's case, since he offered a letter from his physician that suggested he suffers from physical and mental conditions. He also argues that the hearing officer and Board failed to properly evaluate the applicable aggravating and mitigating circumstances and that the one-year suspension is disproportional to sanctions imposed for similar offenses. We reject Cohen's arguments and affirm the Board's recommendation that Cohen should provide restitution and serve a one-year suspension without credit for any period of suspension he serves in his other disciplinary matter. We also hold that the hearing officer and the Board may properly consider other pending disciplinary cases in determining sanctions.

I

Statement of the Facts

Cohen was admitted to the WSBA in 1965. His practice consists of workers' compensation, employment law, and personal injury. Since 1970, Cohen has received four admonitions, a censure, and a reprimand because he failed to communicate with clients or diligently pursue cases. Last year, we suspended Cohen for six months followed by two years of probation for misconduct in his handling of

Lawrence Cohn's employment case in 1994. *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 342, 67 P.3d 1086 (2003) (*Cohen* I). *Cohen* I had not been concluded at the time of Cohen's hearing and appeal to the Board in this disciplinary proceeding. However, Cohen had received the WSBA's analysis letter for *Cohen* I, which delineated the actions which led the WSBA to the conclusion that he had violated the RPC prior to the time that he engaged in the misconduct charged here.

This matter arose from Cohen's representation of Ron "Arne" Erickson (Erickson). In May 1996, Erickson retained Cohen to represent him in an employment dispute with King County Parks (King County). The trial court judge initially scheduled Erickson's trial for July 27, 1998. Despite Erickson's requests for quick resolution of his case, Cohen obtained a continuance due to commitments in other cases and failed to inform Erickson about the delay.

Cohen contacted King County's counsel, Alex Golan, about a second continuance in July 1998 after Golan filed a motion to compel discovery. When Golan hesitated, Cohen offered to voluntarily dismiss the suit. Cohen and Golan executed a joint stipulation to voluntarily dismiss Erickson's suit, and the trial court judge dismissed his case on August 6, 1998. To justify this second delay to his client, Cohen told Erickson that King County had asked for the continuance, and that he could not oppose King County's request.

Cohen refiled Erickson's lawsuit in September 1998 but failed to file a confirmation of service or to send Erickson a copy of the scheduling order for the new trial. Cohen also failed to timely file a confirmation of joinder and statement of arbitrability. After Cohen missed a status conference, the trial court judge dismissed Erickson's case without prejudice in April 1999. Cohen paid the sanction required by the court for the missed status conference and subsequent dismissal, and had the case reinstated once again in June 1999.

In November 1999, Cohen approached Golan with a request to transfer Erickson's case to mandatory arbitration. Golan agreed to the transfer. However, Cohen failed to consult with Erickson before requesting mandatory arbitration and failed to explain the risks of arbitration, i.e., that he would be liable for King County's attorney fees and costs if he lost.[1]

At arbitration, Cohen presented two witnesses and demanded one dollar in damages. The arbitrator ruled against Erickson. Cohen then filed for a trial de novo but neglected to timely file a jury demand with his request, pursuant to King County Local Mandatory Arbitration Rule 7.1. On Cohen's motion to reverse this error, the trial court refused to grant Erickson's jury demand.

Finally, in November 2000, after the defendants filed a summary judgment motion and a motion for expedited consideration, Cohen filed a motion to withdraw. He failed to inform Erickson of his intent to withdraw before filing his motion with the trial court. Cohen supported his motion with a letter from his physician that stated Cohen suffered from high blood pressure, hyperlipidemia, and had recently experienced the death of a relative. Cohen knew of his health problems for more than a year before making his decision to withdraw from Erickson's case.

Erickson was unable to obtain new counsel after Cohen withdrew because of the difficult procedural posture of his case. Cohen left his client with no jury, trial de novo, and a rapidly approaching trial date. Consequently, Erickson agreed to dismiss the case with prejudice after defendants notified him that he could be liable for King County's attorney fees and costs.[2]

On September 24, 2001, the WSBA filed its formal complaint against Cohen based on his actions in Erickson's case and held a disciplinary hearing on May 7, 2002. Count

---

[1] The hearing officer found Cohen was motivated to pursue arbitration by a desire to avoid trying the case in January 2000.

[2] Erickson was unaware of his potential liability for attorney fees at trial de novo until contacted by King County.

I alleged Cohen violated RPC 1.3 and/or 3.2 for failure to diligently represent his client and failure to expedite litigation. On count I, the hearing officer found that Cohen had violated RPC 1.3 and 3.2 because he voluntarily dismissed the first lawsuit, failed to conduct any discovery in the first lawsuit, failed to comply with a court order in the second lawsuit resulting in the dismissal of that suit, and transferred Erickson's case to mandatory arbitration shortly before trial. R. at 13, Conclusion of Law (CL) 64.

In count II, the WSBA asserted that Cohen had failed to communicate adequately with his client. On count II, the hearing officer found that Cohen violated RPC 1.4(a) and 1.4(b) because he did not tell Erickson about the voluntary dismissal. He found that Cohen also failed to explain the risks of mandatory arbitration, failed to tell Erickson about the transfer of his case to arbitration, failed to obtain his consent to the arbitration transfer, neglected to return Erickson's phone calls, and failed to keep Erickson informed about the status of his case. R. at 13-14, CL 65.

In count III, the WSBA asserted that Cohen violated RPC 1.15, 1.3, and 1.4 by improperly withdrawing from Erickson's case, and/or failing to withdraw sooner, and/or failing to tell Erickson sooner about his need to withdraw. On count III, the hearing officer found that Cohen had violated RPC 1.15 by withdrawing from Erickson's case without a valid reason. R. at 14, CL 65. The hearing officer did not find that Cohen's claims of physical and mental health problems justified withdrawal. R. at 14, CL 66. Further, Cohen violated RPC 1.15, 1.3, and 1.4 by failing to advise his client about his illness even though he knew about his conditions for more than one year before making his motion to withdraw. *Id.*

The hearing officer considered the following eight aggravating factors when making his decision to discipline Cohen: prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge wrongfulness of the conduct, vulnerability of the victim, substantial experience in the practice of law,

and indifference in making restitution. The hearing officer found one mitigating circumstance: personal or emotional problems. Based on these factors, the hearing officer recommended a one-year suspension with credit for time that Cohen was suspended in then-pending *Cohen* I. R. at 15, CL 73. He also recommended that Cohen receive probation consistent with that imposed in *Cohen* I and that Cohen pay $1,836.42 in restitution to Erickson. *Id.*

The Board adopted the hearing officer's findings of fact, conclusions of law, and recommendation with several amendments. Decision Papers (DP) at 1. The Board omitted all references to *Cohen* I but determined that the remaining aggravating factors justified the yearlong suspension. *Id.* The Board refused to give Cohen credit for any other suspension and declined to impose any probationary period. *Id.* Finally, the Board found that restitution of $1,836.42 should remain a condition of Cohen's reinstatement at the end of the suspension. *Id.* at 2. Cohen appealed.

Before this court, Cohen challenges the hearing officer's and Board's conclusion that the WSBA proved count III since he had provided the hearing officer and Board with his physician's letter, which he asserts established physical and emotional conditions that justified his untimely withdrawal from Erickson's case. Additionally, Cohen argues that the hearing officer and Board incorrectly determined aggravating and mitigating circumstances and that his one-year suspension is disproportional to sanctions imposed for similar misconduct. Cross-appealing, WSBA requests that we provide guidance to the Board as to whether it should consider other pending disciplinary actions as evidence of a pattern of misconduct, an aggravating factor, when it imposes sanctions.

## II

### Standard of Review

This court bears the ultimate responsibility for lawyer discipline in Washington. *In re Disciplinary Pro-*

*ceeding Against Anschell*, 141 Wn.2d 593, 607, 9 P.3d 193 (2000). However, considerable weight is given to the hearing officer's findings, particularly with regard to the credibility and veracity of witnesses. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 246, 66 P.3d 1057 (2003). We will uphold the hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. *In re Disciplinary Proceeding Against Huddleston*, 137 Wn.2d 560, 568, 974 P.2d 325 (1999). We will uphold the hearing officer's conclusions of law if they are supported by the findings of fact. *Id.* at 568-69.

■■ We give greater weight to the conclusions of the Board with regard to the recommended sanction than we give to the conclusions of the hearing officer. *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 162, 896 P.2d 1281 (1995). We have stated that the Board is " ' "the only body to hear the full range of disciplinary matters" ' " and has a " ' "unique experience and perspective in the administration of sanctions." ' " *Anschell*, 141 Wn.2d at 607 (quoting *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 84, 960 P.2d 416 (1998) (quoting *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983))). Nonetheless, we are not bound by the Board's recommendations. *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 317, 962 P.2d 813 (1998).

### III

### Analysis

*Counts I and II*

As an initial matter, Cohen has conceded that the WSBA proved count I, violations of RPC 1.3 and 3.2, and count II,

violations of RPC 1.4(a) and 1.4(b).[3] Therefore, we affirm the hearing officer's conclusion that Cohen violated RPC 1.3 and 3.2 when he failed to diligently pursue Erickson's case or expedite the litigation. Likewise, we affirm the hearing officer's conclusion that Cohen violated RPC 1.4(a) and 1.4(b) when he failed to communicate with Erickson about continuances, the decision to voluntarily dismiss Erickson's suit, the decision to pursue mandatory arbitration, the request for trial de novo, and the motion to withdraw from Erickson's case.

### Count III: Physical and/or Mental Illnesses to Justify Withdrawal

RPC 1.15 details withdrawal requirements for lawyers in Washington State. It contains two sections. RPC 1.15(a)(1)-(3) identifies circumstances that *require* a lawyer to withdraw from representation of a client, and RPC 1.15(b)(1)-(6) identifies circumstances when a lawyer is *permitted* to withdraw from representation of a client so long as withdrawal does not cause "material adverse effect on the interests of the client." RPC 1.15(b). The provision at issue in this matter, RPC 1.15(a)(2), states:

> (a) Except as stated in section (c), a lawyer shall not represent a client or, where representation has commenced, shall, notwithstanding RCW 2.44.040, withdraw from representation of a client if:
>
> . . . .
>
> (2) The lawyer's physical or mental condition materially impairs his ability to represent the client; . . . .

Thus, if a lawyer suffers from a physical or mental condition that affects his representation of a client, RPC 1.15(a)(2) requires the lawyer to withdraw.

---

[3] In his briefs to the Board and this court, Cohen disputed the hearing officer's finding that he failed to conduct discovery on Erickson's behalf and that he voluntarily dismissed Erickson's lawsuit for personal reasons. Cohen's Br. at 7. However, he conceded these findings before this court at oral argument. These findings, in part, justified the hearing officer's conclusion that the WSBA proved counts I and II of its complaint against Cohen.

Cohen argues that RPC 1.15(a)(2) required his withdrawal. He claims that during his representation of Erickson he suffered from weight gain, depression, toothaches, backaches, prostate problems, and nausea. Report of Proceedings at 282. Further, he asserts that his sister-in-law's death exacerbated his physical and mental problems to the point of impairing his ability to represent Erickson. Cohen's Br. at 17.

Other than his own testimony, the only evidence that Cohen presented to support his claim that his physical and mental conditions required his withdrawal was a letter from his physician. The letter stated:

> I am the primary care physician and an internist caring for Mr. Cohen over the last 10 to 15 years. He has recently been found to have hyperlipidemia and elevated blood pressure. It is my opinion that Mr. Cohen's health requires him to decrease his workload dramatically. I have recommended and continue to recommend a number of modalities including a significantly reduced work schedule for the next three months. He is receiving appropriate treatment for his current illness.
>
> On a different level, he is also undergoing a significant time of personal stress, and other significant issues, exacerbated by a recent death in the family.

Ex. 41. The hearing officer concluded that "this letter lacks sufficient specificity to be accorded weight, particularly absent any opportunity to be subject to cross-examination." R. at 11, Findings of Fact (FOF) 55. The Board affirmed the hearing officer's conclusion. DP at 1.

■■ We generally require expert testimony in disciplinary proceedings to establish medical facts that cannot be discerned by a layperson. *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 869, 846 P.2d 1330 (1993). For example, in *Petersen* the attorney claimed depression as a mitigating circumstance. We held that expert testimony was required because "[a]lthough some symptoms may be observable by lay witnesses, the entire diagnostic process involves medical matters which cannot be evaluated by the observation of lay witnesses." *Id.* at 871.

Additionally, we have required that attorneys claiming depression as a mitigating factor demonstrate that they sought professional help and are pursuing a recommended treatment plan. *In re Disciplinary Proceeding Against McGough*, 115 Wn.2d 1, 17, 793 P.2d 430 (1990).

Here, Cohen did not produce any expert testimony to establish the medical facts of his alleged physical and mental conditions. *See Petersen*, 120 Wn.2d at 871. Moreover, we agree with the hearing officer that the letter from Cohen's physician carries little weight given its lack of specificity about his conditions. The physician's letter fails to mention many of the health problems claimed by Cohen during his own testimony at the disciplinary proceeding. In regard to the two conditions it does mention, hyperlipidemia and high blood pressure, it fails to discuss how long Cohen suffered from the conditions and what type of treatment, if any, he pursued. Because Cohen fails to provide any expert testimony or specific details about his conditions and treatments, he cannot argue that RPC 1.15(a) mandated his withdrawal.

■ Since Cohen cannot convincingly claim that RPC 1.15(a)(2) or any other events under RPC 1.15(a) mandated his withdrawal, the permissive withdrawal provisions in RPC 1.15(b) govern. RPC 1.15(b) states that a lawyer may withdraw "if withdrawal can be accomplished without material adverse effect on the interests of the client." Here, the WSBA established that Cohen withdrew less than a month before trial and that Erickson could not find another attorney to take his case. Erickson also suffered financial consequences since he paid Cohen for at least some of his legal fees. Thus, Cohen's last-minute withdrawal clearly had a material adverse financial effect on Erickson and effectively denied him his day in court. Therefore, we hold that the hearing officer correctly concluded that Cohen violated RPC 1.15(b), 1.3, and 1.4 when he withdrew from Erickson's case one month before the scheduled trial.[4]

---

[4] Cohen also argues that the WSBA did not prove count III because the WSBA bears the burden of showing that he did not actually suffer from physical and

*Sanction*

■■ The American Bar Association's *Standards for Imposing Lawyer Sanctions*[5] (*Standards*) govern lawyer sanctions in Washington. *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 492, 998 P.2d 833 (2000). This court evaluates whether the hearing officer properly determined the presumptive sanction by considering (1) the ethical duty or duties that the lawyer violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's misconduct. *Id.*; *see also* STANDARDS std. 3.0(a)-(c). Next, we consider whether the hearing officer properly weighed the aggravating and mitigating factors. *Halverson*, 140 Wn.2d at 493; *see also* STANDARDS std. 3.0(d). In addition, this court also considers the recommended sanction in light of two additional factors: the degree of unanimity among the Board and its proportionality with sanctions imposed for similar misconduct. *Kuvara*, 149 Wn.2d at 259.

## The Presumptive Sanction

Here, the hearing officer found several ethical violations. He concluded that Cohen violated RPC 1.3 and 3.2 by failing to represent Erickson diligently and failing to expedite the litigation consistent with Erickson's interests.

---

mental problems when he withdrew from Erickson's case. Essentially, Cohen contends that RPC 1.15(a)(2) acts as an affirmative defense, and he met his initial burden by stating that he suffered from physical and mental problems. The burden then shifted to the WSBA to show that he did not. Cohen, however, mischaracterizes his obligation under RPC 1.15(a)(2). We have generally required that the lawyer establish his or her physical and/or mental conditions at disciplinary proceedings when the lawyer asserts that the conditions led to or contributed to his misconduct. *See Petersen*, 120 Wn.2d at 871 (finding that the lawyer failed to provide sufficient evidence to demonstrate existence of a physical and/or mental condition that would mitigate his misconduct); *see also McGough*, 115 Wn.2d at 17 (finding that the lawyer's efforts to pursue treatment for his clinical depression were insufficient to merit a finding that his depression should serve as a mitigating factor). To hold otherwise would require that the WSBA prove the negative, e.g., absence of Cohen's physical and/or mental conditions, a position we find untenable.

[5] (1991 & Supp. 1992).

R. at 13, CL 64. Cohen also violated RPC 1.4(a) and 1.4(b) by neglecting to keep Erickson reasonably informed about the progress of his case and failing to explain matters sufficiently for Erickson to make informed decisions. R. at 13-14, CL 65. Finally, Cohen violated RPC 1.15, 1.3, and 1.4 by withdrawing from Erickson's case shortly before trial, failing to withdraw earlier, and failing to advise Erickson of his inability to continue to represent him until he filed his motion to withdraw. R. at 14, CL 66.

Additionally, the hearing officer found that Cohen acted knowingly. R. at 14, CL 68. The *Standards* defines "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." STANDARDS at 17. Ample evidence exists to support the hearing officer's conclusion given that Cohen knew his decisions to continue, dismiss, transfer to arbitration, and withdraw from Erickson's case would have the effect of delaying Erickson's suit. Accordingly, we find that the hearing officer correctly concluded and the Board properly affirmed that Cohen acted with knowledge.

The record also indicates that Cohen caused actual harm to his client. Despite Erickson's repeated pleas for quick resolution of his case, Cohen significantly delayed Erickson's suit several times through no fault of Erickson and without Erickson's knowledge or consent. Further, Erickson called Cohen frequently but was unable to speak to Cohen, and Cohen rarely returned his calls. R. at 13, FOF 61. When Cohen withdrew, Erickson could not find another attorney to take his case. R. at 13, FOF 59, 60. In effect, Cohen's actions deprived Erickson of his day in court. Thus, Erickson suffered actual harm.

Given that the WSBA established that Cohen knowingly failed to perform services for Erickson which resulted in injury and/or engaged in a pattern of neglect, the hearing officer determined that suspension served as the presumptive sanction for counts I and II pursuant to *Standards* std.

4.42.[6] R. at 14-15, CL 69. He also found that suspension served as the presumptive sanction for count III pursuant to *Standards* std. 7.2 since Cohen knowingly caused actual harm to Erickson when he withdrew from his case one month before the scheduled trial.[7] R. at 15, CL 70. We find that the hearing officer correctly concluded that suspension served as the presumptive sanction given Cohen's ethical violations, his mental state, and the degree of harm inflicted on his client from his misconduct.

## Aggravating and Mitigating Circumstances

Next, we must consider aggravating and mitigating circumstances. The hearing officer evaluated the aggravating and mitigating circumstances pursuant to *Standards* stds. 9.22 and 9.32. Eight aggravating factors existed: prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct,[8] multiple offenses, refusal to acknowledge wrongfulness of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. R. at 15, CL 71. The hearing officer found a pattern of misconduct, in part, because of the similarity of Cohen's conduct in the Erickson matter with Cohen's misconduct in then-pending *Cohen* I. R. at 15, CL 71. The hearing officer found only one mitigating circumstance: personal or emotional problems.

---

[6] *Standards* std. 4.42 states:

Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

[7] *Standards* std. 7.2 states:

Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.

[8] This court has determined a pattern of misconduct exists when an attorney has committed multiple violations involving multiple clients over an extended period. *In re Disciplinary Proceeding Against Brothers*, 149 Wn.2d 575, 586, 70 P.3d 940 (2003).

The Board adopted the hearing officer's analysis of the aggravating and mitigating factors but refused to consider Cohen's misconduct in *Cohen* I because *Cohen* I was still pending when the hearing officer rendered his decision. DP at 1. Nonetheless, it affirmed the hearing officer's decision to impose a one-year sanction[9] and to require restitution. DP at 1-2. Since the Board determined that the hearing officer improperly considered *Cohen* I, it refused to permit Cohen credit toward the one-year suspension for time that he served in *Cohen* I. *Id*. In effect, its decision lengthened Cohen's suspension.

 First, Cohen objects to the Board's reliance on his 1970's and 1990's disciplinary offenses when it considered his yearlong suspension. Cohen's Br. at 28. He contends the offenses are too remote. However, the similarity of the past misconduct with the current matter makes these previous matters highly relevant. In fact, we considered the previous matters as an aggravating factor when we determined his sanction in *Cohen* I last year. *Cohen* I, 149 Wn.2d at 340. Therefore, we affirm the Board's decision to consider Cohen's 1970's and 1990's offenses as evidence of a pattern of misconduct, an aggravating factor.

 In addition, since confusion exists about the impact of pending disciplinary actions like *Cohen* I on determinations of appropriate attorney sanctions, we recognize that some guidance from this court is necessary. Accordingly, we

---

[9] In addition to his misconduct in *Cohen* I, Cohen's full disciplinary record includes the following offenses:

(1) In 1972, he received a censure for failing to communicate, giving his client false information about his case, and failing to cooperate in WSBA's investigation.

(2) In 1973, he received a reprimand for neglecting a legal matter by failing to attend hearings on the client's behalf.

(3) In 1990, he received two admonitions for not communicating with his clients, not timely sending relevant documents to his clients, and failing to act with diligence.

(4) In 1990, he received an admonition for failing to comply with a court order requesting that a pretrial order be filed, which resulted in the dismissal of his client's case with prejudice.

(5) In 1990, he received an admonition for failing to keep his clients reasonably informed about two cases, in particular failing to advise them that their cases had been dismissed. Ex. 55.

hold that the hearing officer properly considered *Cohen* I as evidence of a pattern of misconduct when determining the length of Cohen's suspension.[10] Thus, the Board should have considered *Cohen* I as further evidence supporting a finding of a pattern of misconduct.

Cohen also disputes the hearing officer's conclusion that he acted with a selfish motive, an aggravating factor, when he decided to withdraw from Erickson's case. Cohen's Br. at 28-29. Rather, Cohen claims that he adhered to his duty under RPC 1.15(a)(2). Given that we have rejected Cohen's claims that he offered sufficient evidence to demonstrate existence of a physical or emotional condition and the absence of other reasons for withdrawal, we also reject Cohen's argument that he acted in the best interests of his client when he withdrew because of his alleged health problems. Therefore, we affirm the hearing officer's finding that Cohen acted with a selfish motive.

 A six-month suspension is the accepted minimum term of suspension. *Cohen* I, 149 Wn.2d at 339. In *Cohen* I, we found that "[t]he minimum suspension is appropriate in cases where there are both no aggravating factors and at least some mitigating factors, or when the mitigating factors clearly outweigh the aggravating factors." *Id.* In this case, aggravating factors overwhelmingly outweigh the mitigating factors. This justifies a period of suspension above the minimum term. Moreover, even if we were to strike the aggravating factors that Cohen contests, aggravating factors still outweigh mitigating factors. We agree that suspension higher than the minimum is appropriate.

 Lastly, we consider the Board's decision to refuse Cohen credit for the suspension that he received for his

---

[10] We have previously held that the hearing officer and Board may take a pending disciplinary action into account in a second disciplinary action provided that the attorney was aware of the first action. *Brothers*, 149 Wn.2d at 586. Other states have also considered pending disciplinary actions to determine whether a pattern of misconduct existed. *See, e.g., In re Brown*, 184 Ariz. 480, 484 n.3, 910 P.2d 631 (1996); *In re Wilson*, 715 N.E.2d 838, 841-42 (Ind. 1999); *In re Disciplinary Action Against Bailey*, 527 N.W.2d 274, 276 (N.D. 1995).

misconduct in *Cohen* I. We find that the Board correctly refused Cohen "credit for time served" given Cohen's repeated misconduct. Therefore, Cohen's suspensions in *Cohen* I and this matter should run consecutively.

## The *Noble* Factors

 Additionally, this court considers the revised *Noble* factors of degree of unanimity and proportionality. *Kuvara*, 149 Wn.2d at 259; *see also Noble*, 100 Wn.2d at 95-96 (adopting five factors to consider when evaluating the Board's sanction recommendation). Here, the Board was almost unanimous in its decision, voting 11 to 1 to recommend a one-year suspension. Given the degree of unanimity, we should hesitate to grant a lesser sanction. *See Noble*, 100 Wn.2d at 94.

 "Under proportionality review, we analyze whether a presumptive sanction is proper by comparing the case at hand with other similarly situated cases in which the same sanction was approved or disapproved." *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003). In *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 821, 72 P.3d 1067 (2003), we stated that the attorney facing discipline bears the burden of bringing cases to the court's attention that demonstrate the disproportionality of the sanction imposed. Cohen points to various *Washington State Bar News* disciplinary notices to support his argument of disproportionality. Cohen's Br. at 30-32. However, these notices do not provide the degree of specificity necessary to permit a meaningful comparison with Cohen's case, particularly as they do not mention the attorneys' previous disciplinary records.

We find our discussion and application of proportionality in *Anschell*, 141 Wn.2d at 615-19, most instructive. In *Anschell*, the Board recommended that Anschell receive a two-year suspension because his misconduct had resulted in serious harm to his client and because he had a prior

disciplinary record. *Id.* at 615. Like Cohen, Anschell argued that the two-year suspension was disproportional in light of past attorney sanctions, without citing to any specific cases that supported his argument. *Id.* at 618-19. Following a discussion of past cases that imposed suspension, we held that the nature of the harm (loss of legal status for immigrants) coupled with prior disciplinary offenses justified Anschell's two-year suspension. *Id.* at 618.

Similar to *Anschell*, the nature of the harm in this case and Cohen's past disciplinary offenses support a one-year suspension. First, although the harm to Erickson did not rise to the level of loss of legal immigration status suffered by the client in *Anschell*, Cohen effectively deprived Erickson of his day in court, a significant harm. Further, Cohen committed similar misconduct numerous times. Therefore, in consideration of Cohen's prior disciplinary offenses, his offense in *Cohen* I, and the harm Erickson suffered, we hold that Cohen's one-year suspension was proportional to cases where we have imposed such a penalty.

## IV

## Conclusion

We affirm the hearing officer's and Board's findings that Cohen violated the RPCs by failing to act diligently and in the best interests of his client, failing to communicate adequately with his client, and withdrawing from the representation without valid medical reasons to the detriment of his client. Given the facts of this case and Cohen's prior disciplinary record, the Board's recommendation of a one-year suspension with restitution should be affirmed.

JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.