FILED
COURT OF APPEALS
DIVISION II

2013 OCT 22 AM 8: 54

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MELISSA N. ROBBINS and GEOFFREY ROBBINS, | No. 43666-3-II |
| Respondents, | |
| v. | |
| LEGACY HEALTH SYSTEM, INC., LEGACY SALMON CREEK HOSPITAL, CEO LEE DOMANICO, WILLIAM HASTINGS, M.D., SALMON CREEK ANESTHESIA PROVIDERS, LLC, JENNIFER SCHANTZ, C.N.M., PACIFIC MIDWIFERY SERVICES, LLC, JANE DOE nurse, Drs. JOHN or JANE DOE, | PUBLISHED OPINION |
| Defendants, | |
| MARY SCHULTZ, | |
| Appellant. | |

QUINN-BRINTNALL, J. — Mary Shultz appeals the trial court's June 15, 2012 order refusing to allow her to withdraw as the attorney for Melissa and Geoffrey Robbins. Concluding that the trial court abused its discretion in refusing to allow Schultz to withdraw, we reverse the trial court's order and remand with instructions to vacate that order effective June 15, 2012.

No. 43666-3-II

## FACTS

In late 2008, the Robbinses contacted Schultz, a Spokane attorney, to see if she would represent them in a medical negligence case in Clark County. Schultz sent the Robbinses a proposed representation agreement and advised them that the litigation costs would very likely be in the tens of thousands of dollars. After reviewing the document and consulting with independent counsel, the Robbinses and Schultz executed representation agreements. As to litigation costs, the agreements provide,

> **8.      Litigation Costs are the responsibility of the Client.   The Client is responsible for paying all costs of this litigation as they are incurred.**
>
> a.      All reasonable costs and expenses associated with pursuing the matter in Paragraph 1 will be charged to the Client. The Client agrees to pay for, reimburse and save the Attorney harmless from any and all costs, disbursements and expenses incurred or deemed necessary by the Attorney in the handling of the Client's case.
>
> b.      The Attorney is authorized to advance for the account of the Client those costs and expenses which are deemed necessary and proper for the prosecution of Client's claims, but the Client shall reimburse the Attorney as that Client is able to do so, using best efforts. The Client shall also reimburse all outstanding costs existent at the time of settlement, conclusion of litigation, termination of representation by Attorney, or other conclusion of the case.

Clerk's Papers (CP) at 54. As to termination of the agreements, they provide,

> 20.      Client may discharge Attorney at any time, upon written notice to Attorney. Attorney may withdraw from representation of Client (a) with Client's consent, (b) upon court approval, or (c) if no court action has been filed, for good cause and upon reasonable notice to Client. . . .
>
> a.      Abandonment of the claim by the Client may occur if the Client breaches this contract, or materially fails to cooperate with the office or the contractual provisions herein. In the event the Attorney feels that she is required to withdraw because of such, then such is considered a forced termination.

CP at 57-58.

2

In 2008 and 2009, the Robbinses sent Schultz $52,000 to pay for their costs. Schultz consulted with experts regarding the case and used up those funds. By January 2012, Schultz had advanced the Robbinses an additional $34,000 for expert fees, deposition costs, and travel expenses, and the amount of her legal services totaled almost $270,000.

Schultz told the Robbinses in November 2011 that their case would not move forward unless they complied with the fee agreement. She subsequently gave the Robbinses 60 days notice that she would file a formal notice of withdrawal unless they agreed to pay the outstanding costs and undertook to finance the necessary costs to allow the case to proceed. According to the Robbinses, Schultz said they had to immediately reimburse her for $34,000 in costs and would have to pay an additional $50,000 to $100,000 in costs.

In January 2012, Schultz tried unsuccessfully to find the Robbinses another attorney. She sent them a letter in February 2012, offering assistance in transferring the case and inviting them to have any interested counsel contact her. The Robbinses attempted to retain another attorney, but the other attorneys refused to take the case because it was too far into the litigation and because the Robbinses asserted that Schultz "was claiming a lien for costs and fees of over $300,000." CP at 49. The Robbinses did not pay Schultz any money beyond the initial $52,000.

Schultz filed a notice of withdrawal on April 4, 2012. At the time, no formal action in the case had occurred for over a year, no summary judgment motion had been filed, and no trial date was set. Two of the medical defendants moved for summary judgment shortly after Schultz filed her notice of withdrawal. The Robbinses retained an attorney for the limited purpose of objecting to Schultz's withdrawal. After they filed their objection, Schultz moved for permission to withdraw. She also moved to continue the recently filed summary judgment motions, noting that the Robbinses would need time to find new counsel to respond, who would in turn need time

to (1) understand the evidence generated to date, (2) obtain an expert affidavit establishing the standard of care violations, and (3) address the law related to chief executive officer liability. The two medical defendants subsequently agreed to strike their summary judgment motions pending resolution of the representation matter.

At the hearing on her motion, Schultz argued that she was entitled to withdraw because the Robbinses had breached the fee agreement and had failed to fulfill their obligations regarding her services. She stated that the Robbinses had made no effort or arrangements to pay costs since May 2010 despite receiving monthly statements providing that costs were to be reimbursed on a monthly basis.

The Robbinses responded that they would be adversely affected if Schultz withdrew because there were two summary judgment motions pending and because they had been unable to find another lawyer. They claimed that Schultz had sabotaged their ability to retain new counsel by sending them paperwork stating that she was owed $300,000, and they argued that it was Schultz's responsibility to find them a new attorney. Schultz responded that the Robbinses had requested the extensive paperwork she had provided and that she did not expect to be fully reimbursed for her legal expenses once she withdrew from the case. She referred to other conflicts between her and the Robbinses but did not elaborate. Finally, she added that there was no issue of financial inability, as Geoffrey makes $100,000 annually and Melissa is on disability. "[T]here's never been any demonstration to me that these individuals cannot send in $100 a month on costs." Report of Proceedings (RP) (May 30, 2012) at 19.

The court ruled that Schultz could not withdraw until summary judgment was done, adding that it would release her after she helped the Robbinses find a new attorney. The court refused to respond to Schultz's questions about who would be responsible for costs.

4

During the hearing for entry of the order, Schultz appeared telephonically. Before presenting the order, the Robbinses complained that Schultz had declined to assist them in dealing with a subrogation notice they received from an insurance carrier. Schultz had interpreted the court's ruling as limiting her representation to the summary judgment motions, but the Robbinses had understood that Schultz would represent them in all aspects of the case through those motions. The Robbinses also complained that Schultz had written in a billing statement that she could "recommend the case but not the client," and that it was clear that she was not helping them find a new lawyer. RP (June 15, 2012) at 9. The Robbinses wanted the court to clarify that Schultz was obligated to represent them in all aspects of the case through summary judgment and that her representation was not contingent on their payment of any additional costs.

Schultz replied that she was in the unprecedented position of being ordered to represent clients without having the funds to do so. She then responded to criticisms about her efforts in obtaining the Robbinses a new attorney:

> I don't know how I can present this case or these clients to subsequent counsel in a manner that will allow them to obtain counsel because I can't promote the clients. I've not been paid by them. They've breached the contract with me. They're in conflict with me now. They're now accusing me of ethical violations through their counsel. They've essentially taken me on and placed me in a horrific conflict position. They're now asking that I continue to finance their case forward without any responsibility on their part. And I don't know how under those circumstances, Your Honor -- I don't know how I can going [sic] to another lawyer and say: This is a great case and a great client, and I really want you to take this on.

RP (June 15, 2012) at 15.

The Robbinses responded that they were also in a bind because due to Schultz's billing of over $270,000, they could not find a new attorney even though they did not want her to continue.

Schultz replied that she had not billed $270,000 but had simply kept track of her work to date. She added that the Robbinses, who thought their case was worth millions, could not contribute $50,000 and then say, "You will loan us the rest of the money, and we don't want you representing us, but you will loan us the rest of the money so that we can recover millions of dollars on the claim." RP (June 15, 2012) at 19.

The trial court declined to expand on its earlier ruling and signed an order stating that Schultz was required to continue representing the Robbinses "at least through the pending summary judgment motions brought by defendants" and to "actively assist the Robbins [sic] to obtain new counsel." CP at 519. The trial court then observed that attorneys could be held in contempt if they failed to follow a court order.

Schultz subsequently moved for reconsideration, noting a telephonic hearing. She could not appear in person because she was in Montana attending to a family emergency. The trial court declined to allow Schultz to appear telephonically and, after a brief hearing, struck her motion for reconsideration. In doing so, the court noted its concerns about the case and opined that a bar complaint might be in order. An attorney for one of the medical defendants confirmed during the hearing that he had struck his motion for summary judgment.

On July 16, 2012, Schultz filed a motion for discretionary review, which we granted. A few months later, the Robbinses retained a new attorney and filed a notice of withdrawal of their objection to Schultz's motion to withdraw as their attorney. The Robbinses subsequently moved to vacate the June 2012 order and to discharge Schultz.

Schultz opposed the Robbinses' motion, but argued that if it was granted, the trial court should grant her motion to withdraw as of June 15, 2012, instead of discharging her as of the March 2013 hearing date. The trial court declined to issue the order nunc pro tunc to June 2012.

The court issued an order on March 8, 2013, that vacated the prior order requiring Schultz to remain as counsel for the Robbinses and discharged her subject to this court's approval under RAP 7.2(e).[1]

In seeking such approval, the Robbinses contended that the trial court's March 2013 order rendered Schultz's appeal moot. Schultz disagreed, arguing that the order left her responsible for the case between June 2012 and March 2013. Our commissioner denied the trial court permission to formally enter the order and agreed that Schultz's appeal was not moot:

> [B]ecause the March 8, 2013 order does not specify the date that the Appellant was relieved of her obligations as counsel, and because the parties are unable to agree on an amended order that would specify that date, the March 8, 2013 order would not moot the appeal because this court can still provide the Appellant with some relief, in the form of determining the date as of which the Appellant was relieved of her obligations as counsel.

Commissioner's Ruling, *Robbins v. Legacy Health System, Inc., et al.*, No. 43666-3-II (Wash. Ct. App. March 28, 2013). We denied the Robbinses' motion to modify that ruling.

## DISCUSSION

### MOOTNESS OF APPEAL

The Robbinses continue to argue that this appeal is moot because they have retained a new attorney and discharged Schultz, and because the trial court has agreed to vacate its earlier order denying Schultz's motion to withdraw. They claim that there can be no harm to Schultz because she never complied with the June 2012 order requiring her to continue representing them and to assist them in finding a new attorney.

---

[1] If the trial court's determination of a postjudgment motion "will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e).

Mootness is a question of law that we review de novo. *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wn. App. 174, 204, 293 P.3d 413, *review denied*, 308 P.3d 643 (2013). Courts generally do not review moot cases. *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004). A case is moot when a court can no longer provide effective relief. *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

The Robbinses' claim that this case is moot because Schultz never complied with the trial court's order rings hollow. That alleged noncompliance could be used against Schultz if the order is not invalidated at its outset and if she is left responsible for the case from the date of the June 2012 order until entry of the March 2013 order. During the March 2013 hearing, the trial court refused to issue its order nunc pro tunc because the issue of Schultz's obligations between June 2012 and March 2013, as well as related contractual questions, needed to be litigated. The resulting order thus extended the validity of the June 2012 order through March 8, 2013. Because we can still provide Schultz with relief by invalidating the 2012 order as of the date of entry, we reject the Robbinses' assertion that this appeal is moot.

MOTION TO WITHDRAW AS COUNSEL

Withdrawal is a matter addressed to the trial court's discretion, and we review the trial court's decision for abuse of discretion. *Kingdom v. Jackson*, 78 Wn. App. 154, 158, 896 P.2d 101 (1995), *review denied*, 129 Wn.2d 1014 (1996). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). When withdrawal is sought by a retained attorney in a civil case, it generally should be allowed. *Kingdom*, 78 Wn. App. at 160. The court's approval "'should be rarely withheld and then only upon a determination that to grant said request would interfere with the efficient and proper functioning

of the court.'" *Kingdom*, 78 Wn. App. at 160 (quoting *Fisher v. State*, 248 So. 2d 479, 486 (Fla. 1971)).

When retained counsel in a civil case seeks to withdraw, he or she must abide by the requirements in CR 71(c). *Kingdom*, 78 Wn. App. at 156-57. CR 71(c) requires a withdrawing attorney to provide proper notice to clients, all other parties, and the court. *See also* RCW 2.44.050 (focusing on notice to opposing counsel); *Jones v. Home Care of Wash., Inc.*, 152 Wn. App. 674, 681, 216 P.3d 1106 (2009) (discussing interplay of CR 71 and RCW 2.44.050), *review denied*, 169 Wn.2d 1002 (2010). If the client objects to an attorney's withdrawal, withdrawal may be obtained only by court order. CR 71(c)(4). Although CR 71 provides detailed procedural guidance to a withdrawing attorney, it does not define the circumstances under which a court may deny withdrawal. CR 71(a); *Kingdom*, 78 Wn. App. at 157.

In *Kingdom*, this court explained that a trial court should consider "all pertinent factors" in determining whether to allow withdrawal and set forth these nonexclusive factors:

> [W]hether withdrawal will delay trial or otherwise interfere with the functioning of the court, whether the client has had or will have an opportunity to secure substitute counsel, whether the client has sufficient prior notice of the lawyer's intent to withdraw, whether the client lacks the ability to prove a prima facie case, whether the client has failed to pay the lawyer's fees, whether the client has failed to cooperate with the lawyer, whether a denial of withdrawal will cast an unfair financial burden on the attorney, whether the lawyer is unable to find or communicate with the client, and whether there is any other prejudice to the client or lawyer.

78 Wn. App. at 158-60 (citations omitted).

Some of these factors are found in RPC 1.16,[2] which addresses the circumstances under which an attorney can or must decline or terminate representation. *Kingdom*, 78 Wn. App. at 158-60. The rule provides that a lawyer may withdraw from representing a client if

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
> (2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
> (3) the client has used the lawyer's services to perpetrate a crime or fraud;
> (4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;
> (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; *or*
> (7) other good cause for withdrawal exists.

RPC 1.16(b) (emphasis added). The rule is phrased in the disjunctive such that an attorney may ethically withdraw if the client will not be hurt, if the client exhibits any of five specific behaviors, or if other good cause exists. *See* 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, RPC 1.16, official cmts. at 394-95 (7th ed. 2011).

In *Kingdom*, attorney Paul Luvera notified his client, Kingdom, that he wanted to withdraw and would help find another attorney. 78 Wn. App. at 156. None would take the case, and eight months after providing his initial notice, Luvera sent a notice of withdrawal to the trial court. *Kingdom*, 78 Wn. App. at 156. Kingdom objected, and the trial court ruled that it would grant Luvera's motion permitting withdrawal only upon substitution of counsel for Kingdom. *Kingdom*, 78 Wn. App. at 156. We held that the trial court abused its discretion because the

---

[2] The *Kingdom* court refers to former RPC 1.15 (2005). The rule was renumbered as RPC 1.16 and amended effective September 1, 2006, but these changes do not affect *Kingdom*'s analysis or holding. *See* 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, RPC 1.16 at 394 (7th ed. 2011).

agreement allowed Luvera to withdraw at any time and because Luvera should not bear any responsibility for the success of seeking new counsel, particularly where he minimized the impact of his withdrawal by notifying his client of his intent 17 months before trial. *Kingdom*, 78 Wn. App. at 161.

Schultz argues that the facts supporting her withdrawal are more compelling than those in *Kingdom*. She contends that she was entitled to withdraw because her clients breached their fee obligations, her continuing representation imposed an undue financial burden on her, and the Robbinses rendered further representation unreasonably difficult. *See Kingdom*, 78 Wn. App. at 159; RPC 1.16(b)(5), (6). Schultz asserts that here, as in *Kingdom*, an express provision in the representation agreement allowed her to withdraw, and she notes that she gave the Robbinses ample notice of her intended withdrawal and offered, at the time she gave notice, to help them find new counsel and facilitate transfer of the case. Schultz adds that the Robbinses made it clear that they did not want her representation and that the scope of the trial court's order, which required her to find counsel for clients who had retained another attorney to oppose her withdrawal, was both unreasonable and unprecedented.

The Robbinses respond that *Kingdom* is distinguishable because, unlike their case, no dispositive motions were pending when Luvera sought permission to withdraw. They argue that they would have lost their initial investment of $52,000 had they been obligated to proceed pro se during the pending summary judgment proceedings and that the potential prejudice to them was similar to that described in *In re Disciplinary Proceedings Against Cohen*, 150 Wn.2d 744, 82 P.3d 224 (2004).

In *Cohen*, defense counsel withdrew less than a month before trial, and his client could not find another attorney to take his case after paying counsel some of his legal fees. 150 Wn.2d

11

at 757. In upholding the resulting disciplinary sanctions, the Supreme Court observed that counsel's last-minute withdrawal had a material adverse financial effect on his client and effectively denied him his day in court. *Cohen*, 150 Wn.2d at 757.

The Robbinses contend that because summary judgment proceedings were pending at the time Schultz sought to withdraw, her withdrawal would have had similarly adverse consequences. *See* RPC 1.16(b)(1). Schultz succeeded in having the two defense motions for summary judgment withdrawn before the hearing on her motion, however, and they have not yet been renoted. Furthermore, even if the summary judgment motions had been refiled before the Robbinses obtained a new attorney, the trial court could have stayed or continued further proceedings pending the appointment of new counsel.

The Robbinses also contend that the trial court was entitled to consider Schultz's conduct in evaluating her requested withdrawal. They maintain that her lien of over $300,000 in the case deterred anyone else from representing them.

While the fee agreement expressly authorizes Schultz to assert such a lien, she has not filed one to date. *See* RCW 60.40.010 (explaining how attorney lien is created and enforced). Moreover, we note in addition that Washington law permits an attorney working on a contingency fee basis to recover for her time spent on a client's behalf on a quantum meruit basis if the client discharges the attorney before the contingency representation can be completed. *Barr v. Day*, 124 Wn.2d 318, 329, 879 P.2d 912 (1994); *Taylor v. Schigaki*, 84 Wn. App. 723, 728, 930 P.2d 340, *review denied*, 132 Wn.2d 1009 (1997). Schultz was under no obligation to forfeit her work on this case or to hide it from prospective counsel, and the fact that she spent considerable effort on the case should not bar her withdrawal.

The Robbinses also argue that they have not breached the fee agreements and that they have used their best efforts to comply with their financial obligations. Their "best efforts" claim is undermined by the Robbinses' stated understanding that Schultz would advance the court costs herself, subject to reimbursement from the proceeds of the case. But this understanding is not supported by the fee agreements that the Robbinses reviewed and signed, which allow Schultz to advance costs at her discretion. Moreover, the Robbinses support their claim that they have used their best efforts by maintaining simply that they are "broke"; they do not describe any attempt to pay costs beyond the initial $52,000.

The Robbinses add that even if they did breach the fee agreements, Schultz did not avail herself of the remedy provided therein: "In the event of cost breaches, Attorney *may* require, and the Client agrees to submit, a financial statement under oath to confirm any inability to pay on request of the attorney, and to confirm that best efforts are being made." CP at 60 (emphasis added). Here again, Schultz's exercise of this provision is discretionary. Furthermore, any such exercise would have been pointless in the face of the Robbinses' stated understanding that Schultz was obligated to advance them additional costs as well as their position that they were incapable of making any further financial contribution.

Simply put, after their initial investment, the Robbinses did not pay the costs as required by their fee agreements. It is clear that further representation would result in an unreasonable financial burden on Schultz and that with their dispute over fees and the resulting professional conflict, the Robbinses rendered Schultz's representation unreasonably difficult. *See Kingdom*, 78 Wn. App. at 159; RPC 1.16(b)(5), (6). Here, as in *Kingdom*, counsel gave her clients ample notice of her intent to withdraw and ample time to find a new attorney. And here, unlike *Kingdom*, the clients were no longer satisfied with their attorney. This is not one of those rare

cases where Schultz's withdrawal would have harmed the efficiency of the judicial system, and we do not see that her withdrawal would have had a materially adverse effect on the Robbinses' interests. Trial had not been set and there were no dispositive motions before the court when Schultz moved to withdraw.

The trial court abused its discretion by failing to consider all relevant factors in evaluating Schultz's motion to withdraw as counsel for the Robbinses. Accordingly, we remand for entry of an order granting Schultz's motion to withdraw as of June 15, 2012. Schultz is entitled to costs under RAP 14.2, subject to compliance with RAP 14.4.

Reversed and remanded.

QUINN-BRINTNALL, J.

We concur:

HUNT, P.J.

MAXA, J.