[No. 00373-4. En Banc.]
Argued February 11, 2003. Decided May 8, 2003.

*In the Matter of the Disciplinary Proceeding Against*
Norman W. Cohen, *an Attorney at Law.*

*Kurt M. Bulmer*, for petitioner.
*Anne I. Seidel*, for the Bar Association.

---

---

JOHNSON, J. — Attorney Norman W. Cohen asks this court to reverse the recommendation of the Washington State Bar Association Disciplinary Board (Board) to suspend him for six months from the practice of law. The violations arose from Cohen's representation of a client in an employment matter. The Board found Cohen violated the Rules of Professional Conduct by failing to prepare and file a substantive response to a summary judgment motion, failing to timely reply to a court order, failing to keep his clients informed of the status of their case, and billing his clients for an appeal that stemmed from his misconduct. Cohen seeks reversal of the Board's recommendation and the hearing officer's factual findings and asks us to reduce the six-month suspension to a reprimand. We agree with the Board's recommendation and impose a six-month suspension followed by two years of probation.

## I

Norman W. Cohen was admitted to the practice of law in 1965. Since that time he has been and remains an active member of the Washington State Bar Association (WSBA). Cohen was retained by Lawrence Cohn to represent him in an employment matter against the Department of Corrections. This WSBA disciplinary proceeding relates to Cohen's actions in relationship to that lawsuit.

A lawsuit brought by Cohen on behalf of Lawrence Cohn was filed and originally set for trial in June 1993. In March 1993, Cohen requested a continuance and a new trial date was set for March 7, 1994. On January 28, 1994, Cohen and defense counsel participated in a conference in which the court entered an order confirming the March 7, 1994, trial date. At the conference, the judge also set a late discovery cutoff and entered an order allowing defendants until the week of trial to file any summary judgment motions. On February 2, 1994, the defendants filed a motion for summary judgment. A hearing on the motion was set for February 28, 1994. Decision Papers (DP) at 7.

The answer to the defendants' motion was due either Friday, February 18, 1994, or Tuesday, February 22, 1994, as Monday was a holiday. The hearing officer found that Cohen made no effort to respond to the motion until February 18, 1994. On February 24, 1994, rather than filing a substantive answer to the summary judgment motion, Cohen responded by asking for additional time to respond and/or a continuance of the trial date. DP at 8. The basis for Cohen's continuance request was he was unable to prepare for trial due to multiple, unspecified illnesses which he apparently suffered from at the time the response was due. A hearing on Cohen's motion to continue took place on February 28, 1994. At the conclusion of the hearing, the trial court entered an order requiring Cohen to elect whether to take a voluntary nonsuit or request a continuance. If a continuance were requested, Cohen was required to pay $1,000 in costs/sanctions to the defendants. The order concluded by stating, "If neither of these options is taken by the [March 7, 1994] trial date, the court will enter an order of dismissal on that date." DP at 9.

Cohen did not comply with the court's order. On March 7, 1994, Cohen mailed a letter to the clerk of the court dated March 2, 1994, which stated he was tendering $1,000 as ordered by the judge. However, Cohen did not pay the $1,000 into the registry until March 10, 1994. DP at 9-10.

On March 9, 1994, the court dismissed the lawsuit with prejudice, finding that Cohen had failed to make an election as the February 28, 1994, order required. DP at 10. Soon after, Cohen unsuccessfully moved for reconsideration and on April 28, 1994, filed a notice of appeal.

Between early March and early May 1994, Lawrence Cohn and his wife tried unsuccessfully to reach Cohen by phone to inquire about the status of their case. On March 22, 1994, Cohen sent the Cohns an itemized billing statement. In late April, Mrs. Cohn wrote to Cohen asking for an update and enclosed a payment of $11,982.25. The hearing officer determined that at this time Cohen did not tell the Cohns their case had been dismissed.

Cohen unsuccessfully appealed the dismissal of the lawsuit. The Court of Appeals affirmed the dismissal and held that mailing the March 2, 1994, letter on March 7, 1994, was not reasonably calculated to provide timely notice because it was mailed on the deadline for filing. Cohen subsequently billed the Cohns $3,000 for this appeal. The hearing officer later found this bill unreasonable because Cohen's own misconduct caused the dismissal.

## II

The ultimate responsibility for determining the nature of lawyer discipline lies with this court. *In re Disciplinary Proceeding Against Tasker*, 141 Wn.2d 557, 565, 9 P.3d 822 (2000). However, we have delegated certain responsibilities to the WSBA. The hearing officer makes findings of fact, conclusions of law, and initial recommendations to the Board. While the hearing officer's findings are not conclusive, they are entitled to considerable weight, especially where the credibility and veracity of witnesses are at issue. The Board reviews the hearing officer's decision and is free to adopt, modify, or reverse findings, conclusions, or recommendations of the hearing officer. The hearing officer's conclusions of law are upheld if they are supported by the findings of fact. *In re Disciplinary Pro-*

*ceeding Against Huddleston*, 137 Wn.2d 560, 568-69, 974 P.2d 325 (1999). In this case, the Board, with minor revisions, adopted the findings and conclusions of the hearing officer.

## Cohen's Challenges to the Findings of Fact

■ Findings of fact that are unanimously adopted and supported by a clear preponderance of the evidence generally will not be disturbed by the court. *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 161-62, 896 P.2d 1281 (1995). Here, the Board made minor changes to the hearing officer's findings and conclusions and unanimously agreed with the recommendation for a six-month suspension. Two members of the Board filed a concurrence stating that the claim concerning billing for the appeal was not well taken and would not sustain the hearing officer's conclusion of law, count IV. They nevertheless believed the six-month suspension was proper.

Cohen disputes several of the hearing officer's findings of fact. Most notably, Cohen claims the hearing officer and the Board wrongfully found: (1) he did not begin work on the summary judgment response until February 18, 1994, (2) he did not tell his client about the dismissal with prejudice until May 3, 1994, delaying until that date in order to collect his fee, and (3) he filed the appeal without notice to his clients and before they knew that their lawsuit had been dismissed. DP at 8-11. Despite Cohen's claims, we conclude the findings are supported by the evidence as shown below.

### 1. Summary Judgment Response

Finding of fact 11 states Cohen "made no effort to respond to the defense motion for summary judgment until February 18, 1994 which was either the day the response was due or one business day before it was due." DP at 8. Cohen argues the Board and the hearing officer erred when finding he did not begin work on his response until this date. In making this finding, the hearing officer relied on Cohen's billing records, which showed Cohen spent time on January

18, 1994, February 19, 1994, and February 20, 1994, preparing a response to the summary judgment motion. There is however one problem with Cohen's records. Defense counsel did not file its summary judgment motion until February 2, 1994, and Cohen's billing records show he received the motion on February 2. DP Ex. 28. In light of this, the hearing officer determined that work on the response to the motion did not begin until February 18, 1994. The January 18, 1994, date was determined to be a clerical error. Cohen's sworn declaration also supports this conclusion. In his declaration concerning February 18, 1994, Cohen states: "I spent a couple hours in the office preparing the documents when it became extremely difficult to continue. I went home about noon." DP Ex. at 67. No other dates on Cohen's billing records account for time spent preparing for the response to the motion.

Cohen alleges that the finding was incorrect and provided four drafts of his response brief and several photocopied cases as evidence of this. DP Ex. 31. However, the drafts Cohen claims contradict the hearing officer's finding are just that, drafts. Of the four briefs and photocopied cases there is only one date that appears. On top of the first of the four draft briefs there is a note about the need to cite and name check the brief with some scribbled initials and the numbers "2/25". DP Ex. 31, at 1. If the numbers are in fact meant to be a date, Cohen still fails to prove he began work on the response prior to February 18, 1994. Given the evidence described above, we agree with the hearing officer's finding that the January 18, 1994, entry was incorrect and work on the response did not actually begin until February 18, 1994. This factual finding is affirmed.

2. Cohen Did Not Inform His Clients About the Dismissal until May 3, 1994

Cohen's second disputed finding centers on his communications with the Cohns after the trial date passed. Finding of fact 25 states that Cohen did not advise his clients of the March 9, 1994, order dismissing their suit until a meeting on May 3, 1994. The testimony of Mr. and Mrs. Cohn

supports this finding. Both Mr. and Mrs. Cohn stated that they tried on numerous occasions to contact Cohen to learn about the status of their case but did not learn of the dismissal until the May 3, 1994, meeting. Additionally, there is a letter dated October 15, 1994, to Cohen from Mr. Cohn in which he mentions May 3, 1994, as the date in which he found out that his lawsuit had been dismissed.

■ Cohen's only argument to refute Mr. Cohn's testimony is to argue that it is not consistent and therefore, unreliable. Cohen does not offer any specific evidence to support his argument. While Mr. Cohn's testimony may be difficult to follow or understand at times, it does paint a clear picture. In spite of this, Cohen still asserts that his testimony, rather than Mr. Cohn's, should be given greater weight. The hearing officer, not Cohen, is charged with the responsibility of weighing credibility. Moreover, Cohen's own testimony was that he did not know if he called or wrote to Mr. Cohn in March or April to inform him that his case had been dismissed. It is Cohen's contention that he does not have an exact memory of when he told Mr. Cohn of the dismissal but that it was likely around the time of the motion for reconsideration. The hearing officer disagreed and entered a finding which is consistent with the evidence. The record contains sufficient evidence to support the finding that Cohen did not inform Mr. Cohn about the dismissal until May 3, 1994, and, thus, the finding is affirmed.

3. Delay in Order to Collect His Fee

■ Cohen also claims there is a lack of evidence to support the finding he delayed telling the Cohns their case was dismissed so he could collect a substantial fee from them. Proof of motivation can be difficult to show and is generally shown through circumstantial evidence. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 69, 821 P.2d 18 (1991).

Here, there is ample circumstantial evidence that shows Cohen's motivation. First, the timing surrounding the events provides support for the finding. The case was

dismissed on March 9, 1994, and Cohen received the order on March 14, 1994. Soon after, on March 22, 1994, the Cohns received an itemized billing for the work Cohen had done on their case. Prior to March 22, 1994, Cohen had not only received notice of the dismissal but had also filed a motion for reconsideration. There was nothing on the itemized bill referencing any of this. The only entries dated after March 2, 1994, stated:

[1] 03/03/94-03/10/94 Prepare renewed notices of deposition, prepare for depositions, receive letter stating defendants will not appear, [and]

[2] 3/07/94 Letter to/from Letter to Judge Downing.

DP Ex. 28 at 000500-501. The amount owed on the bill was in excess of $15,000. The Cohns agreed to pay $11,982.25 of the bill on April 29, 1994, believing that they still had a case.

Second, Mrs. Cohn testified that Cohen would not return their phone calls during March or April, even though he had previously been very good about returning calls and keeping them updated. In the letter from Mrs. Cohn to Cohen enclosing the $11,982.25 payment, Mrs. Cohn stated, "We cannot seem to get ahold [sic] of you by telephone to set up any kind of an appointment to discuss either the case or the bill so suggest you give us a call." DP Ex. 28, at 000519.

Third, Cohen procured payment of almost $12,000 before advising the Cohns their case was dismissed with prejudice. This supports the finding that Cohen withheld the information for almost two months because he was in the process of collecting a substantial fee.

 Given the sequence of events and testimony referenced above, the hearing officer drew reasonable inferences based on the evidence. Cohen offers no new evidence to rebut the hearing officer's findings; thus, we affirm and adopt the hearing officer's findings of fact as amended by the Board.

Cohen's Challenges to the Conclusions of Law

■ Cohen challenges the hearing officer's and Board's conclusions of law, counts I, II, and IV, that he improperly billed his client and that he "knowingly" deceived and injured his client. Instead, Cohen asserts that he was merely negligent. We generally adopt the conclusions of law from the Board if those conclusions are well supported by the findings of fact.

Cohen argues that his failure to give himself enough time to get the response to the summary judgment ready and his failure to act in enough time to respond to the court's order before its deadline was, at most, negligent. He also maintains that the Cohns knew their case had been dismissed with prejudice, but if they did not, Cohen's failure to inform his client was due to only negligence on his part. As far as charging an unreasonable fee, Cohen states, at most, he was negligent in his belief that he was entitled to send out the billing reflecting the work he had done on the appeal.

1. Violation of RPC 1.3—Reasonable Diligence

■ Cohen challenges conclusion of law, count I, which states:

> Mr. Cohen's conduct in failing to prepare and file a substantive response to the defense motion for summary judgment and in failing to timely respond to the court's February 28, 1994 order violates RPC 1.3 and subjects him to discipline under [former] RLD 1.1(i).[1]

Under RPC 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Cohen's failure to prepare and file a substantive response to the defendants' motion for summary judgment and failure to timely respond to the court's February 28, 1994,

---

[1] Former RLD 1.1(i) (1997) states that a lawyer may be subjected to the disciplinary sanction set forth in these rules for violating the Rules of Professional Conduct as adopted by the Supreme Court of the State of Washington. This court recently adopted the Rules for Enforcement of Lawyer Conduct (ELCs), which supersede the Rules for Lawyer Discipline (RLDs). The ELCs did not take effect until October 1, 2002. Because Cohen's misconduct took place before this date, the RLDs will be applied.

order violated RPC 1.3. DP at 12. The fact Cohen received the summary judgment motion on February 2, 1994, and did not start work on the response until the day it was due, or one business day before, supports the conclusion that Cohen knew he was not properly preparing the response in order to have it completed on time. Moreover, by filing a motion for more time to respond, Cohen demonstrates that he knew he did not respond to the motion in the first place.

As to the dismissal, the trial court clearly stated in its February 28, 1994, order that if neither option, taking a voluntary nonsuit or continuance, is taken by the March 7, 1994, trial date, the court will enter an order dismissing the lawsuit. Cohen admitted he was aware of the order and yet did not mail a response to the order until March 7. Since the court informed Cohen that an order of dismissal would be issued on March 7, obviously a letter mailed on the same day would not reach the court in time to prevent an order of dismissal.

Cohen once again argues his actions were merely negligent. ABA Standard 4.42(a) provides that suspension is generally appropriate when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client." ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 4.42(a) (1991). In *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 608, 9 P.3d 193 (2000), we were asked to look at a similar argument. Mr. Anschell was found to have violated RPC 1.3, but claimed his actions were only negligent because the matter " 'fell through the cracks.' " *Anschell*, 141 Wn.2d at 610 (quoting Anschell Br. at 5-6). Mr. Anschell, like Cohen, failed to tell his clients that he had missed deadlines. We found Mr. Anschell's actions to be knowing and suspended him for two years. *Anschell*, 141 Wn.2d at 620. Cohen's situation is little different. In light of our holding in *Anschell*, the Board correctly found that Cohen's lack of diligence in failing to respond to the summary judgment motion and the trial court order was a knowing violation of RPC 1.3.

2. Violation of RPC 1.4—Failure to Communicate with Client

▆▆ ▆▆ Cohen challenges the Board's determination that he violated RPC 1.4. Conclusion of law, count II, states:

[Mr. Cohen's] failure to advise his clients that the case was dismissed until almost two months after the fact violated RPC 1.4 and subjects him to discipline under [former] RLD 1.1(i).

DP at 12. RPC 1.4 provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

As discussed above, Cohen failed to keep his clients reasonably informed in order to collect a fee. We conclude this failure to advise his clients that their case was dismissed for nearly two months violates RPC 1.4. The record establishes that Cohen knew the case was dismissed in March 1994. The Cohns testified that despite their repeated attempts to contact Cohen, they were unaware of this fact until May 1994. As conclusion of law, count II states, ABA Standard 4.62 specifies that "suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." DP at 12-13. Under RPC 1.4(a), Cohen had an obligation to notify the Cohns about the status of their case. In failing to do so, he took away their right to make decisions relating to their case in violation of RPC 1.4(b).

Cohen's only response to count II is that his clients did know the case had been dismissed and that he was seeking an appeal. However, he offers no evidence to support this argument and we find none. As noted above, the Cohns called Cohen several times in March and April 1994, trying to find out the status of their case and to discuss the bill Cohen had sent them. Cohen testified that he did not know whether he told them about the dismissal, but still claims

that he did. Only after the Cohns paid the $11,982.25 did Cohen inform them of the dismissal. The Board correctly concluded Cohen was in violation of RPC 1.4 in that he knowingly deceived the Cohns.

3. Violation of RPC 1.5(a)—Reasonable Fees

■ Finally, Cohen challenges conclusion of law, count IV, which states:

> Mr. Cohen's conduct in billing the clients for preparing the appeal to the Court of Appeals violated RPC 1.5 and subjects him to discipline under [former] RLD 1.1(i).

DP at 13. RPC 1.5(a) provides that an attorney's fee shall be reasonable. Cohen charged the Cohns approximately $3,000 for the appeal. Cohen does not claim he accidentally charged the Cohns for the appeal, rather he claims the billing was justified. WSBA counsel does not take issue with Cohen's assertion that he believed the appeal was valid. Both the dismissal order and the order denying reconsideration state that his failure to comply with the trial court's February 28, 1994, order was the sole reason for the court's dismissal of the suit. DP Ex. 1, at 000013 (order denying reconsideration); DP Ex. 1, at 000035 (order of dismissal). It is the fact the appeal was necessitated by Cohen's misconduct, the fact that he did not inform the Cohns of the dismissal, and the fact he did not seek their approval in pursuing the appeal that makes it unreasonable for Cohen to charge the Cohns for his time spent preparing the appeal.

■ ABA Standard 7.2 provides that suspension is appropriate when a lawyer knowingly engages in conduct that violates a duty owed to the profession and causes injury or potential injury to the client. ABA STANDARDS std. 7.2 (1991 & Supp. 1992). The Board found Cohen responsible for the dismissal order through his misconduct, and therefore he knowingly charged his clients a fee he should not have. The hearing officer concluded Cohen's billing constituted a knowing violation of RPC 1.5(a), and we affirm this conclusion.

Sanctions

In determining appropriate attorney disciplinary sanctions, the court engages in a two-step process utilizing the ABA *Standards*. First, the presumptive sanction is determined by considering: (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of the actual or potential harm caused by the misconduct. Second, the court considers any aggravating or mitigating factors that may alter the presumptive sanction or affect the duration of a suspension. *Anschell*, 141 Wn.2d at 608.

A lawyer's mental state may be evaluated on the basis of intent, knowledge or negligence. A lawyer acts with intent when he or she has the conscious objective or purpose to accomplish a particular result. Knowledge exists when the lawyer has " ' "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ' " *Anschell*, 141 Wn.2d at 610 (quoting *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 169, 896 P.2d 1281 (1995) (quoting ABA STANDARDS Definitions at 7)). Conversely, negligence is the failure of a lawyer " ' "to heed a substantial risk that circumstances exist or that a result will follow" and that failure "is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ' " *Anschell*, 141 Wn.2d at 610 (quoting *McMullen*, 127 Wn.2d at 169 (quoting ABA STANDARDS Definitions at 7)).

The mental state is important because of the presumptive sanction to be considered. When the misconduct is "knowingly," the presumptive sanction or starting point in determining the appropriate sanction is suspension. With negligent acts, the presumptive sanction is less than suspension. We agree with the Board that Cohen acted knowingly and the record amply supports this conclusion. As a result, Cohen's misconduct caused injury to his clients by causing their case to be dismissed with prejudice, thereby denying them their day in court. He then furthered

the Cohns' injury by not advising them of the status of their case until he received payment on his fee.

## Mitigating and Aggravating Factors

We rely on the ABA *Standards* when determining the appropriateness of sanctions levied by the Board.[2] We recognize the Board's expertise in attorney discipline cases and, thus, do not reject it in the absence of clear reasons. *Anschell*, 141 Wn.2d at 607. A period of six months is generally the accepted minimum term of suspension. *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 495, 998 P.2d 833 (2000). The minimum suspension is appropriate in cases where there are both no aggravating factors and at least some mitigating factors, or when the mitigating factors clearly outweigh the aggravating factors. *Halverson*, 140 Wn.2d at 497. Therefore, the Board should deviate from the presumptive sanction only if the aggravating and mitigating factors are sufficiently compelling to justify a departure. While six months may be the presumptive starting point when suspending an attorney, it is not necessarily the absolute minimum.

In this case, there are several aggravating factors including: (1) prior disciplinary offenses (six disciplinary actions over the period of time Cohen has been an attorney,

---

[2] The mitigating factors include: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse . . . ; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses." ABA STANDARDS std. 9.32 (1991 & Supp. 1992). Aggravating factors include: "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) illegal conduct including voluntary use of controlled dangerous substances." ABA STANDARDS Std. 9.22 (1991 & Supp. 1992).

including at least two instances of neglect resulting in dismissal of clients' cases),[3] (2) dishonest or selfish motive (Cohen not telling his clients the case was dismissed until the fee was paid), (3) failure to acknowledge wrongful conduct (Cohen stated at the hearing he believes he did nothing wrong), (4) multiple offenses (Cohen's failure to communicate, failure to provide diligent representation, and charging an excessive fee), and (5) substantial experience in the practice of law (Cohen has been an active member of the WSBA since 1965).

With respect to mitigating factors, the Board determined that the prior disciplinary actions were remote in nature and not relevant to the case at hand, and thus a mitigator. We disagree with this determination. Four of the six prior disciplinary actions dealt with Cohen's failure to communicate with his clients, one dealt with his neglect of a legal matter and the other for failing to comply with a court order. These prior disciplinary actions are for essentially the same type of conduct that resulted in the present action. Despite the fact that the hearing officer found them remote, they do suggest a pattern and do not constitute mitigation.

Cohen argues delay in the disciplinary process is a significant mitigating factor that justifies a departure from

---

[3] Cohen's complete disciplinary history is as follows:

1. A censure dated January 27, 1972, for failing to communicate with his client, falsely telling his client that a case had been filed and a court date set when neither was true, and failing to cooperate with investigation of four grievances.

2. A reprimand dated April 20, 1973, for neglect of a legal matter.

3. An admonition dated April 25, 1990, for failing to return a client's calls, failing to send her documents on her case in a timely manner, and failing to represent her diligently.

4. A second admonition dated April 25, 1990, for failing to comply with a court order requiring a pretrial order to be filed, resulting in the dismissal of his client's case.

5. An admonition dated August 30, 1990, for failing to calendar a trial date, failing to promptly pay terms assessed by the court, and failing to promptly turn over the client's file when requested at the termination of the representation.

6. An admonition dated November 7, 1990, for failing to keep his client informed about two cases and failing to tell his clients that their cases had been dismissed.

the presumptive sanction of suspension. He claims because the Board and the hearing officer failed to give him credit for a delay in the proceedings, the aggravators and mitigators were wrongfully applied, leading to the recommendation of a six-month suspension. Standard 9.32(i) provides for mitigation if there is a delay in the proceedings. However, we have previously held that delay in the prosecution of attorney discipline cases does not automatically warrant a reduction in sanctions. *In re Disciplinary Proceeding Against Tasker*, 141 Wn.2d 557, 568, 9 P.3d 822 (2000).

Delay in the disciplinary proceedings is but one mitigating factor that is to be balanced against a number of aggravating factors. *See In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 82, 960 P.2d 416 (1998) (recognizing delay as a consideration yet still upholding the Board's one-year suspension). Although the delay between the clients' grievance in March 1995, the issuance of the formal complaint in August 1998, and the hearing in November 2001, is somewhat substantial, when balanced against the numerous aggravating factors in this case, the delay falls short of being a mitigator. Further, Cohen himself contributed to the delay by failing to timely file a response to his clients' grievance. After receiving notification of the initial grievance by the WSBA, Cohen waited over nine months to reply. Later, after the formal complaint was filed, Cohen's answer was due 20 days later, yet, he delayed filing his answer for nearly two months after the deadline. As a result, portions of the delay can be attributed to Cohen.

In addition, Cohen argues he was prejudiced by the delay in that he can no longer be certain his file is complete and documents may be missing. Cohen was given notice of the grievance as of October 17, 1996, and had ample time to complete billing records and confirm the accuracy and adequacy of his notes and file. As such, Cohen's claim of prejudice and credit for a delay in the proceedings lacks merit.

## Conclusion

Even if we were to determine delay was a mitigating factor, the aggravators nonetheless greatly outweigh the single mitigator. In addition, if no mitigators are present, a greater suspension may be appropriate. In light of this, we conclude that the hearing officer's recommendation of a six-month suspension is appropriate.

Other than to challenge his mental state and argue that a reprimand should be the appropriate sanction, Cohen does not, and could not, claim or argue that the sanction recommended unanimously by the Board is disproportionate in any way. Cohen has neither shown nor offered any evidence warranting a deviation from the Board's recommendation. Therefore, we adopt the Board's recommendation and order Norman W. Cohen be suspended for six months followed by two years of probation.

MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.