99 P.3d 881 (2004)
152 Wash.2d 558
In the Matter of the DISCIPLINARY PROCEEDING Against Antony P. DeRUIZ, Attorney at Law.
No. 200,062-2.
Supreme Court of Washington, En Banc.
Argued June 24, 2004.
Decided October 21, 2004.
*883 Marsha Ann Matsumoto, Washington State Bar Association, Seattle, for Petitioner/Appellant.
Antony Paul Deruiz, Edmonds, for Appellee/Respondent.
JOHNSON, J.
This attorney discipline case against Antony P. DeRuiz consolidates two matters.[1] These matters generally involve allegations that DeRuiz neglected client cases, failed to communicate with clients, failed to refund unreasonable and unearned fees, and failed to cooperate with grievance investigations. For each matter, the Disciplinary Board of the Washington State Bar Association unanimously recommended a six-month suspension. *884 We affirm, imposing two six-month suspensions to be served consecutively.

FACTUAL AND PROCEDURAL HISTORY
WSBA Public No. 02# 00033 (DeRuiz I)
WSBA Public No. 02# 00033 consolidated two grievances. One, WSBA File No. 01-01331, Robert Frederickson and Beverly Lowry as grievants, and two, WSBA File No. 01-01785, Stephen P. McDowell as grievant.

The Frederickson/Lowry Matter
On June 6, 2001, DeRuiz met with Robert Frederickson at the Indian Ridge correction facility, where Frederickson signed a written fee agreement in which Frederickson agreed to pay DeRuiz a $1,500 nonrefundable fee to represent him at a probation review hearing. DeRuiz told Frederickson and his mother, Beverly Lowry, that he would get Frederickson out of jail within a few days after Frederickson paid the fee. Lowry paid the $1,500 fee on June 12, 2001.
Around June 13, 2001, Frederickson placed a collect call to DeRuiz and asked him if a court date for the probation review hearing had been scheduled. DeRuiz told him that a date would be set soon.
Between June 13, 2001, and July 9, 2001, Frederickson tried several times, unsuccessfully, to call DeRuiz to find out the date for the hearing. DeRuiz never responded to Frederickson's inquiries. DeRuiz stipulated that he did not write or speak to Frederickson after June 13, 2001.
On June 26, 2001, Frederickson called Snohomish County District Court and learned from the court clerk that a hearing date had not been scheduled. The court clerk told him that a court date had not been set because DeRuiz had filed the wrong papers.
On June 27, 2001, DeRuiz filed a notice to schedule a motion for sentence review, requesting that the matter be set for July 9, 2001, at 9:30 a.m. The court set the hearing for that date and time.
Sometime between June 29, 2001, and July 9, 2001, after numerous attempts to reach DeRuiz, Lowry finally spoke with him.[2] Lowry asked DeRuiz when the hearing would take place. DeRuiz was upset and suggested to Lowry that he should terminate his representation of Frederickson because Frederickson had contacted the court to find out whether a hearing had been set in his case. However, DeRuiz did not tell Lowry that he was in fact terminating the representation or that he would not be present at the hearing, and he never filed a notice of withdrawal from the case. DeRuiz told Lowry that the hearing was scheduled for July 9, 2001, and terminated the call. DeRuiz had no contact with Lowry or Frederickson after this telephone call.
On July 9, 2001, Lowry, her daughter, and a family friend were present in court for the probation review hearing. Frederickson was not present because DeRuiz failed to arrange transportation from the correctional facility. DeRuiz was also absent from court. Lowry, her daughter, and the prosecutor tried to reach DeRuiz, but they were unsuccessful. The court canceled the hearing because DeRuiz was not present. Immediately after the hearing was canceled, Lowry went to DeRuiz's office, but he was not there. Lowry left him a note, asking why he did not appear in court and requesting her money back. She also unsuccessfully tried to reach DeRuiz by telephone for another week.
On August 1, 2001, Lowry sent DeRuiz a letter by certified mail dated July 31, 2001, asking DeRuiz to return the $1,500 and asking why he did not appear in court on July 9, 2001. DeRuiz did not return any of the $1,500, did not respond to Lowry, and did not file a notice of withdrawal. Lowry eventually obtained a civil default judgment against DeRuiz in the amount of $1,590.
On August 20, 2001, the WSBA sent DeRuiz a letter requesting his response to grievances filed by Lowry and Frederickson. DeRuiz responded but did not address his failure to appear for the July 9 hearing.
On October 29, 2001, the WSBA sent DeRuiz a letter requesting an additional response *885 to the grievance, and specifically asked DeRuiz to explain why he failed to appear at the hearing. The WSBA also asked DeRuiz to provide a complete copy of the client file, including the written fee agreement. DeRuiz failed to respond and failed to provide a copy of his file.
On December 3, 2001, the WSBA issued a subpoena duces tecum for DeRuiz to appear at a deposition on January 3, 2002, with his complete client file. ABC Legal Messenger Service personally served DeRuiz on December 10, 2001. One day before the scheduled deposition, DeRuiz faxed a letter indicating that he was in the Czech Republic and would not be able to attend the deposition. Disciplinary counsel rescheduled the deposition for January 14, 2002.
On January 14, 2002, DeRuiz appeared for the deposition and brought a copy of his client file. Before the deposition was completed, and before disciplinary counsel asked DeRuiz why he failed to appear for Frederickson's July 9 hearing, DeRuiz terminated the questioning, stating that he wished to consult with counsel. Disciplinary counsel agreed to continue the deposition for two weeks to enable DeRuiz to obtain counsel and asked DeRuiz to have his lawyer contact the WSBA before January 22, 2002, to reschedule the deposition. Neither DeRuiz nor his counsel contacted the WSBA before January 22, 2002. On January 23, 2002, disciplinary counsel notified DeRuiz that the deposition was rescheduled for January 29, 2002.
On January 28, 2002, DeRuiz left a voice mail message for disciplinary counsel indicating that he believed he had already provided the WSBA with the necessary information. DeRuiz did not appear for the January 29 deposition.
On February 5, 2002, disciplinary counsel sent a letter to DeRuiz offering to reschedule the deposition for February 19, 2002. DeRuiz did not respond to this letter.

The McDowell Matter
In March 2000, DeRuiz represented Stephen P. McDowell on misdemeanor charges. After the representation, DeRuiz suggested that McDowell file an appeal of the Department of Licensing's (DOL) revocation of his driver's license. DeRuiz also led McDowell to believe that he would know within 30 days whether McDowell could return to work as a commercial truck driver.
On November 11, 2000, McDowell hired DeRuiz to appeal the DOL's license revocation, and the parties executed a written fee agreement in which McDowell agreed to pay $2,000 for the appeal. McDowell immediately paid DeRuiz $1,000 in cash.
Months passed without DeRuiz contacting McDowell on the status of the case. During this period, McDowell's employer terminated his employment because McDowell did not have any information on the status of his driver's license.
Beginning in approximately March 2001, McDowell attempted to contact DeRuiz several times to find out the status of his appeal. He was unable to reach DeRuiz so he left messages when DeRuiz's voice mail would accept them. The messages asked about the status of the matter, for an accounting of the funds, and for the return of any unearned fees. DeRuiz did not respond to McDowell's requests for information about the status of the appeal, did not provide an accounting, and did not return any of the fees.
On October 15, 2001, the WSBA received a grievance filed by McDowell against DeRuiz. On October 18, 2001, the WSBA acknowledged receipt of the grievance and encouraged DeRuiz to communicate with McDowell to provide him with a copy of the client file. DeRuiz complied by sending a copy of the driving under the influence and revocation hearing file. The WSBA closed the grievance.
On December 20, 2001, McDowell submitted a second grievance against DeRuiz, noting that DeRuiz failed to provide him with the client file relating to the appeal and failed to account for the $1,000 fee.
On January 22, 2002, the WSBA sent DeRuiz a request for information with a copy of the two grievances filed by McDowell. DeRuiz never answered the request.
On February 26, 2002, disciplinary counsel sent letters by certified mail to DeRuiz's *886 business and home addresses, notifying DeRuiz that he must file a written response to the grievances within 10 days or he would be subpoenaed for a deposition. The letters to DeRuiz's home and business addresses were returned unclaimed.
On March 13, 2002, disciplinary counsel issued a subpoena duces tecum for DeRuiz's deposition to be taken on April 2, 2002. The subpoena was personally served on DeRuiz's father on March 19, 2002. On April 2, 2002, DeRuiz sent a letter by facsimile to disciplinary counsel in which he stated that he would not appear at the deposition.
On April 26, 2002, DeRuiz was personally served with a copy of the WSBA's petition for interim suspension. On May 7, 2002, DeRuiz was personally served with this court's order to show cause. DeRuiz failed to file a notice of intent to appear for the show cause hearing and failed to respond to the WSBA's petition. On May 22, 2002, we granted the petition for interim suspension.
On June 17, 2002, DeRuiz attended a deposition and provided the WSBA with the requested materials and the WSBA and DeRuiz filed a joint motion to withdraw the petition for interim suspension. The joint motion was granted on June 18, 2002.
In relation to this consolidated grievance matter, DeRuiz faces the following counts of misconduct: Count IFailing to appear at Frederickson's July 9, 2001 probation review hearing, in violation of the Rules for Professional Conduct (RPC) 1.3 and/or RPC 3.2; Count IIFailing to respond to or accept Frederickson's and/or Lowry's telephone calls and letters, in violation of RPC 1.4; Count IIIFailing to refund unreasonable and/or unearned fees to Frederickson and/or failing to account to Frederickson regarding the $1,500 fee, in violation of RPC 1.5 and/or RPC 1.15(d); Count IVFailing to pursue McDowell's appeal, in violation of RPC 1.3 and/or RPC 3.2; Count VFailing to respond to McDowell's requests for information, in violation of RPC 1.4; Count VIFailing to refund unreasonable and/or unearned fees to McDowell and/or failing to account to McDowell regarding fees paid, in violation of RPC 1.5; Count VIIFailing to cooperate fully and promptly with disciplinary investigations of both the Lowry/Frederickson and/or McDowell grievances, in violation of the former Rules for Lawyer Discipline (RLD) 2.8(a)(1992).
WSBA Public No. 02# 00106 (DeRuiz II)
Donald Gorman hired DeRuiz to represent him on a charge of driving under the influence (DUI) in Grant County. On October 17, 2001, Gorman executed a fee agreement to pay DeRuiz $2,625 to cover the cost of representation with an additional $500 due if the case went to trial. Gorman paid $1,000 of the fee up front. During the same period, Gorman hired DeRuiz to represent him in a deferred prosecution DUI matter in Kittitas County District Court for $2,375 of which $500 was paid up front.
DeRuiz agreed that Gorman could make payments of $100 per month toward the outstanding balance of the fee agreements. Gorman paid DeRuiz $100 on November 27, 2001, December 12, 2001, and January 2, 2002. DeRuiz acknowledged that Gorman was current in his payments through January 2002.
On November 13, 2001, DeRuiz filed a notice of appearance and other documents on Gorman's behalf for the Grant County DUI case. On December 18, 2002, DeRuiz appeared with Gorman at a hearing in Grant County District Court. At this hearing, the court scheduled a pretrial and readiness hearing for January 22, 2002.
On January 22, 2002, DeRuiz called Grant County District Court twice, first to tell the clerk he would be delayed for the hearing and later to inform the court he was unable to successfully travel over Snoqualmie Pass. However, both Gorman and the judge had successfully navigated the pass to attend the hearing. Due to DeRuiz's absence, the court continued the hearing to February 19, 2002.
On February 16, 2002, DeRuiz appeared in court with Gorman for the Kittitas County matter. DeRuiz and Gorman discussed a payment schedule at this time because Gorman had failed to make a payment in February as agreed. DeRuiz warned Gorman that a failure to pay would result in his withdrawal. *887 Gorman responded, "The check is in the mail." 2 Clerk's Papers (CP) at 100.[3]
On February 19, 2002, DeRuiz failed to appear for the hearing in the Grant County matter and did not contact the court, the prosecutor, or his client regarding his failure to appear. Both Gorman and the prosecutor made several unsuccessful attempts to contact DeRuiz at his office. The prosecutor was unable to leave a message because DeRuiz's voice mail was not accepting messages, and the prosecutor's attempt to send a fax letter to DeRuiz's listed fax number also failed. The prosecutor mailed the letter via the U.S. Postal Service. The letter informed DeRuiz that Gorman's hearing was continued one week and asked DeRuiz to call the prosecutor by February 22, 2002. DeRuiz received the letter but did not respond to it or inform the prosecutor that he would no longer represent Gorman in the case.
After February 19, 2002, Gorman attempted on numerous occasions to contact DeRuiz via telephone and by visiting DeRuiz's office to determine why he did not appear for his pretrial hearing. Gorman was not able to contact DeRuiz.
On February 20, 2002, Grant County District Court sent notice of case setting to DeRuiz reflecting the rescheduled pretrial and readiness hearing in Gorman's case for February 25, 2002. DeRuiz admits he received the notice, yet he failed to appear for the February 25 hearing and failed to contact the parties or the court regarding his absence. He also failed to file a motion to withdraw.
Grant County District Court again rescheduled the pretrial hearing for March 12, 2002, and notified DeRuiz of the court's express understanding that DeRuiz represented Gorman in the matter. DeRuiz did not appear for the March 12 hearing and did not formally withdraw. After DeRuiz's complete failure to reply to the court and after discussion with Gorman, the court assigned Gorman a public defender.
On March 18, 2002, Gorman mailed a certified letter to DeRuiz stating he no longer wanted DeRuiz to represent him because DeRuiz failed to attend several court hearings and failed to return his calls. After three failed attempts to serve the letter, the postal service returned it.
On March 19, 2002, the WSBA opened another grievance file on DeRuiz, based on the allegation that he failed to appear at hearings for Gorman. In response to the grievance, DeRuiz wrote to the WSBA on May 6, 2002, that he believed he attended three of five scheduled court hearings in the Grant County matter and that he did not make it to two of the hearings because of weather related to Snoqualmie Pass. DeRuiz also stated in the letter that he did not appear on February 19, 2002, and February 25, 2002, because he no longer represented Gorman and that he had informed Gorman "in no uncertain terms" that he no longer represented him before the February hearings. 2 CP at 103.
DeRuiz later testified at the disciplinary hearing that he was mistaken in his May 6 letter. Instead, he claimed he informed Gorman he was withdrawing from representation sometime after February 19 but before February 25, 2002. However, he stated he did not mail any correspondence to Gorman to indicate his withdrawal, took no notes documenting his withdrawal, and relied upon his admittedly poor memory of the events. He again claimed that he attempted to attend the DUI hearings but failed to cross the pass due to weather and that poor cell phone reception prevented him from calling the court or parties. At the WSBA hearing, Mr. Curtis, who was DeRuiz's driver for a year, also gave self-conflicting testimony that he had attempted to drive DeRuiz over the pass for hearings in Eastern Washington. Finally, to explain his failure to cooperate with the grievance proceedings, DeRuiz claimed that he did not understand the nature of the allegations or the nature of the grievance proceedings.
*888 Gorman testified that DeRuiz never told him that he was terminating the representation and, if DeRuiz had, he would have hired another attorney. Gorman also stated that he certainly would not have made so many unnecessary and costly trips to Grant County for hearings if he had known that DeRuiz no longer represented him and that the hearings would be continued.
Due to the conflicting testimony regarding DeRuiz's attempts to attend the pretrial hearings and his failure to notify the court that he would not be attending the hearings or to explain his absence, the WSBA concluded that he never intended to attend the meetings. 2 CP at 105. Instead, the WSBA found that DeRuiz declined to attend the pretrial hearings on Gorman's behalf because he believed he had no further obligation to Gorman due to Gorman's failure to timely pay fees. 2 CP at 106. DeRuiz does not acknowledge the wrongful nature of his dealings with Gorman and believes he acted appropriately.
In relation to this grievance matter, DeRuiz faces the following counts of misconduct: Count VIIIFailing to appear at Gorman's hearings on February 19, 2002, February 25, 2002, and March 12, 2002, in violation of RPC 1.3 and/or RPC 3.2; Count IXFailing to return Gorman's telephone calls and/or otherwise adequately communicate with Gorman in violation of RPC 1.4(a); Count XFailing to take reasonable steps to protect Gorman's interests upon withdrawal in violation of RPC 1.15(d); and Count XIMaking one or more false statements at the June 17, 2002 deposition and/or in his May 6, 2002 response to Gorman's grievance in violation of RPC 8.4(c) and/or former RLD 2.8(a).
DeRuiz challenges the findings of fact and recommended sanctions for both matters.

ANALYSIS

Standard of Review
This court bears the ultimate responsibility for lawyer discipline in Washington. However, considerable weight is given to the hearing officer's findings, particularly with regard to the credibility and veracity of witnesses. In re Disciplinary Proceeding Against Kagele, 149 Wash.2d 793, 812-13, 72 P.3d 1067 (2003). We will uphold the hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 568, 974 P.2d 325 (1999). We will uphold the hearing officer's conclusions of law only if the conclusions are supported by the findings of fact. Huddleston, 137 Wash.2d at 568-69, 974 P.2d 325. The Disciplinary Board's recommended sanctions are to be given "serious consideration," but "this court retains ultimate responsibility for determining the proper measure of discipline." In re Disciplinary Proceeding Against McLeod, 104 Wash.2d 859, 865, 711 P.2d 310 (1985). We have "adopted the standard ... that the Board's recommendation should be affirmed unless this court can articulate a specific reason to reject the recommendation." McLeod, 104 Wash.2d at 865, 711 P.2d 310.

Challenges of Findings of Fact
DeRuiz disputes the findings of fact by the hearing officer and Disciplinary Board, but he does so only generally by arguing his version of the facts while ignoring testimony by other witnesses that supports each finding. When considering factual challenges, we give particular weight to the hearing officer's findings based upon a determination of credibility and veracity of witnesses because the hearing officer has direct contact with the witnesses and is in the best position to make such judgments. In re Disciplinary Proceeding Against Bonet, 144 Wash.2d 502, 512, 29 P.3d 1242 (2001). An appellants brief is insufficient if, as here, it contains merely a recitation of the facts that are favorable to the appellant while ignoring other testimony. In re Disciplinary Proceeding Against Haskell, 136 Wash.2d 300, 311, 962 P.2d 813 (1998). We affirm the findings of fact below.

Challenges of Conclusions of Law
DeRuiz challenges the Disciplinary Board's conclusion of law for each count charged. Analysis of each challenge follows.

*889 Count I

The WSBA concluded that DeRuiz violated RPC 1.3 and RPC 3.2 by failing to appear at Frederickson's July 9, 2001 probation review hearing. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client. RPC 3.2 provides that a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. A lawyer has a duty to carry through to conclusion all matters undertaken for a client, unless the lawyer withdraws. In re Disciplinary Proceeding Against Miller, 99 Wash.2d 695, 699-700, 663 P.2d 1342 (1983).
It is undisputed that Frederickson hired DeRuiz to represent him in a probation review matter and that DeRuiz did not appear at Frederickson's hearing on July 9, 2001. While DeRuiz argues that he had terminated representation prior to the hearing, he was still the attorney of record and did not file a notice of withdrawal. Frederickson testified that he did not hear from DeRuiz, despite frequent attempts to contact him, after the June 13, 2001, telephone conversation in which DeRuiz informed Frederickson that a hearing date would be set soon. Further, Lowry clearly believed that DeRuiz still represented Frederickson because Lowry, her daughter, and a family friend attended the July 9 hearing expecting to see Frederickson and DeRuiz present.
DeRuiz's failure to appear for the July 9 hearing and failure to formally withdraw from the matter considerably delayed resolution of Frederickson's probation review. Accordingly, we hold that DeRuiz's failure to appear at Frederickson's hearing violated RPC 1.3 and RPC 3.2.

Count II
The WSBA concluded that DeRuiz violated RPC 1.4 by failing to respond to or accept telephone calls from Frederickson and Lowry and by failing to respond to Lowry's note and letter. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. RPC 1.4(b) provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions.
Although DeRuiz argues he responded to all calls and letters that he received, the record contains ample evidence to support the hearing officer's finding that DeRuiz failed to communicate with Frederickson and Lowry. We hold that DeRuiz's failure to respond to Frederickson and Lowry violated RPC 1.4.

Count III
The WSBA concluded that DeRuiz violated RPC 1.5 and RPC 1.15(d) by failing to refund unreasonable, unearned fees to Frederickson and by failing to account to Frederickson or Lowry for the $1,500 up-front payment. RPC 1.5(a) provides that a lawyer's fee shall be reasonable. RPC 1.5(b) provides that, upon client request, a lawyer shall communicate in writing the basis or rate of his fee. RPC 1.15(d) provides that a lawyer shall take steps to the extent reasonably practicable to protect a client's interests upon termination of representation, such as refunding any advance payment of a fee that has not been earned.
Citing Washington State Bar Ass'n, Formal Ethics Opinion 186: The Proper Handling of Advance Fee Deposits and Retainers (1990), DeRuiz argues that a lawyer is entitled to keep a nonrefundable retainer whether or not services are performed. Lawyer's Opening Br. at 23. However, Formal Opinion 186 is distinguishable from the facts here because the "retainer" discussed in Formal Opinion 186 is defined as "funds paid by a client to secure a lawyer's availability over a given period of time." (Emphasis added.) Such a retainer is only permissible when the client agrees to such an arrangement. Here, the "retainer" paid by Lowry is more accurately characterized as a flat fee for legal services in a particular matter because Lowry and Frederickson hired DeRuiz to represent them in a specific matterthe probation review hearing. Lowry and Frederickson were paying for services, not for availability. DeRuiz failed to provide the contracted services.
*890 Citing Kagele, DeRuiz also argues that the WSBA's failure to provide expert testimony that he did not earn the fees is fatal to the charges against him in Count III. DeRuiz's reliance on Kagele is misplaced. In Kagele, we refused to uphold a violation of RPC 1.5 and/or RPC 1.15(d) because we concluded that the record did not support the hearing officer's findings concerning the services rendered, the value of the services, and the time involved. Kagele, 149 Wash.2d at 815, 72 P.3d 1067. We also noted that the findings were problematic because two of Kagele's clients filed civil cases to dispute the fees and, in both cases, the court found Kagele's fees to be reasonable and fully earned. Kagele, 149 Wash.2d at 813, 815-816, 72 P.3d 1067.
Here, the record supports the conclusion that DeRuiz violated RPC 1.5 and RPC 1.15(d). Frederickson hired DeRuiz to represent him at a probation violation hearing. Lowry, Frederickson's mother, paid the agreed amount of $1,500. DeRuiz did not appear at the hearing, did not resolve the matter, did not formally withdraw, and did not respond to telephone calls or letters. Lowry notified DeRuiz that she wanted a refund of the money he did not use so that she could hire another attorney to represent her son. DeRuiz failed to respond or return the money. Lowry recovered the $1,500 with interest in a civil suit. We hold that DeRuiz's failure to perform the agreed legal services and failure to return unearned money violated RPC 1.5 and RPC 1.15(d).

Count IV
The WSBA concluded that DeRuiz violated RPC 1.3 and RPC 3.2 by failing to pursue McDowell's appeal. DeRuiz's only argument is that his testimony as to the agreement between the parties shows that he had a year to pursue the matter. However, the hearing officer and Disciplinary Board found the other evidence to be more credible. That evidence showed that DeRuiz simply failed to pursue McDowell's appeal.
Although DeRuiz previously claimed in testimony to the WSBA that he was waiting for favorable changes in the law, the WSBA's expert, Douglas Cowan, testified that it is not beneficial to wait for changes because changes are infrequent and generally do not benefit a client with a pending appeal or a client who pleaded guilty, as McDowell did. Cowan also testified that it would not be beneficial in a case such as McDowell's to delay filing an appeal because time is of the essence to the client, to whom the harm is ongoing. Cowan's testimony also established that there were no issues in McDowell's case upon which to base a meritorious appeal. Based on this expert testimony, the hearing officer found DeRuiz's argument that he delayed in filing because he was awaiting changes in the law, not to be credible. Thus, the record supports the hearing officer's conclusion that DeRuiz violated RPC 1.3 and RPC 3.2. We hold that DeRuiz violated RPC 1.3 and RPC 3.2 by failing to pursue McDowell's appeal.

Count V
The WSBA concluded that DeRuiz violated RPC 1.4 by failing to respond to McDowell's requests for information. It is undisputed that McDowell hired DeRuiz on November 11, 2000. The WSBA found that between March 2001 and August 2001, McDowell left at least five messages for DeRuiz, without receiving a response except for a call to "rant" in October 2001 and a letter dated July 15, 2002, which arrived after the dismissal of McDowell's case.
DeRuiz asserts that he failed to respond to McDowell because McDowell left threatening messages on his voice mail. DeRuiz's evidence on this issue is limited to his unsworn letter to the WSBA dated April 2, 2002, in which he expressed that he felt threatened by McDowell. DeRuiz refused to testify before the WSBA on the matter.
McDowell, on the other hand, testified that his messages were not threatening, but stern. McDowell denied threatening DeRuiz in the messages. The hearing officer did not find that McDowell threatened DeRuiz.
Regardless of whether McDowell threatened DeRuiz, a lawyer has a duty to inform a client that he is terminating the representation if the lawyer no longer wants to communicate with the client. DeRuiz not only failed *891 to inform McDowell that he was no longer representing him, he failed to communicate with McDowell at all until the case was dismissed. Thus, the record supports the hearing officer's finding and conclusion that DeRuiz failed to communicate with his client. We hold that DeRuiz violated RPC 1.4.[4]

Count VI
The WSBA concluded that DeRuiz violated RPC 1.5 by failing to refund unreasonable, unearned fees to McDowell and by failing to account to McDowell for his funds. McDowell hired DeRuiz to appeal his driver's license revocation, and they agreed on a fee of $2,000, of which McDowell paid $1,000 up front. DeRuiz's work on McDowell's case consisted of filing initial pleadings and contacting McDowell twice in a year and a half. DeRuiz's failure to diligently pursue the matter resulted in dismissal of the case. Because DeRuiz failed to diligently pursue the matter, McDowell asked for a refund and an accounting. DeRuiz ignored the requests.
DeRuiz argues that the WSBA's expert found $2,000 to be a reasonable fee for an appeal. However, DeRuiz did not handle the full appeal, but instead only filed initial briefs and caused the case to be dismissed due to his own inaction. The WSBA's expert testified that certain circumstances dictate a refund of a flat fee, such as when a case is not handled through to completion. Under these circumstances, the record supports the hearing officer's conclusion. We hold that DeRuiz violated RPC 1.5.

Count VII
The WSBA concluded that DeRuiz violated former RLD 2.8, now Rule for Enforcement of Lawyer Conduct (ELC) 5.3(e), by failing to cooperate with the disciplinary investigation of the Frederickson and McDowell grievances. Former RLD 2.8(a) provided that a lawyer shall promptly respond to any inquiry made relevant to grievances or matters under investigation. Former RLD 2.8(b)(3) provided that failure of a lawyer to cooperate fully and promptly constitutes grounds for discipline.
DeRuiz does not dispute the findings of fact entered by the hearing officer, and affirmed by the Disciplinary Board, in support of the conclusion that he violated RLD 2.8. Rather, DeRuiz argues that his failure to cooperate was justified by prosecutorial overreaching. The hearing officer rejected this argument, as do we.
DeRuiz failed to respond promptly to the WSBA's requests for information regarding the DeRuiz I investigation. DeRuiz also failed to appear for the deposition. The WSBA submitted information concerning the grievances and DeRuiz's failure to cooperate to a review committee of the Disciplinary Board. The review committee ordered the two grievances to hearing and unanimously authorized the WSBA to petition for DeRuiz's interim suspension. The WSBA filed a petition for interim suspension in accordance with the review committee's order, and we granted the petition on May 22, 2002. Thus, we have already considered and rejected DeRuiz's arguments.
DeRuiz further argues that the requirement of a lawyer to cooperate must be balanced against the lawyer's due process rights. DeRuiz confuses due process rights with a lawyer's duty to cooperate throughout the disciplinary process. See, e.g., In re Disciplinary Proceeding Against Clark, 99 Wash.2d 702, 663 P.2d 1339 (1983). DeRuiz provides no reasonable argument that his due process rights were implicated. We hold that DeRuiz violated former RLD 2.8, now ELC 5.3(e).

Count VIII
For the Gorman matter, the WSBA concluded that DeRuiz violated RPC 1.3 and RPC 3.2 by failing to withdraw or appear at three hearings for Gorman and by failing to reply to the prosecutor or the court. DeRuiz concedes that he did not notify the prosecutor or the court of his withdrawal and that he should have filed a notice of withdrawal. However, DeRuiz offers two arguments for *892 failure to withdraw and failure to give notice of withdrawal: (1) weather prevented him from traveling to the hearing of February 19, 2002, and (2) he informed Gorman of his withdrawal prior to the later hearings.
Regarding the first argument, the hearing officer expressly rejected DeRuiz's inconsistent and unlikely explanations for his absence from the February 19 hearing. We will not disturb the hearing officer's findings as to DeRuiz's credibility.
The second argument is similar to DeRuiz's argument in DeRuiz I. DeRuiz testified that he informed Gorman of his withdrawal, and Gorman testified that DeRuiz never told him he was terminating the representation. Due to the similar pattern to the prior matter, as well as DeRuiz's inconsistent and implausible testimony throughout the proceedings, substantial evidence supports the hearing officer's findings in favor of Gorman's version of events.
DeRuiz also argues that RPC 1.15(b)(4) allows a lawyer to withdraw from representation when a client fails substantially to fulfill an obligation and has been given reasonable warning. However, RPC 1.15(b) also provides that a lawyer may withdraw only if the withdrawal can be accomplished without material adverse effect on the interests of the client. DeRuiz failed this aspect of the RPC by failing to protect Gorman's interests upon withdrawal and failing to inform the parties and the court of his withdrawal. We hold that DeRuiz violated RPC 1.3 and RPC 3.2.

Count IX
The WSBA concluded that DeRuiz violated RPC 1.4(a) by failing to return Gorman's calls and by failing to adequately communicate with Gorman. DeRuiz's defense is that he never received any requests for information from Gorman. However, the record provides ample evidence to the contrary with testimony from Gorman and the prosecuting attorney. Further, DeRuiz failed his duty to formally withdraw his representation. We hold that DeRuiz violated RPC 1.4(a).

Count X
The WSBA charged DeRuiz with violating RPC 1.15(d) by failing to protect Gorman's interests upon withdrawal. DeRuiz essentially concedes this issue by failing to assign error and failing to argue the issue, other than to dispute the findings of fact. DeRuiz also concedes that he should have filed a notice of withdrawal in the matter. See Lawyer's Opening Br. at 34. We hold that DeRuiz violated RPC 1.15(d).

Count XI
The WSBA concluded that DeRuiz violated RPC 8.4(c) and former RLD 2.8(a) by making false statements at the June 17, 2002 deposition and/or in his May 6, 2002 response to Gorman's grievance. DeRuiz's hearing testimony contradicted his May 6, 2002 response. The hearing officer specifically found that:
Respondent's inconsistent explanations about his failures to appear at the pretrial hearings for Mr. Gorman are not credible. Nor is Respondent credible in his claim that he did not understand the nature of the allegations or the nature of the grievance proceedings such that he should have prepared an accurate statement of the events based on his memory at that time.
2 CP at 105.
DeRuiz does not assign error to any specific findings by the hearing officer and does not cite legal authority to support his contention that the count must fail. Rather, he argues that the count must fail because the transcript of his June 17, 2002 deposition was not offered as evidence into the hearing record. However, the transcript is indirectly part of the record because the record indicates that DeRuiz acknowledged that his deposition testimony regarding the Gorman matter was not clear as to dates or was confused. 2 Transcript of Hearing at 85. Based on this, the hearing officer found that DeRuiz's explanations were not credible. 2 CP at 105-107. We hold that DeRuiz violated RPC 8.4(c) and former RLD 2.8(a).

*893 Sanctions

The presumptive sanction under American Bar Association's Standards for Imposing Lawyer Sanctions stds. 4.42, 7.2 (1991 & Supp.1992) (ABA Standards) was suspension for both matters. DeRuiz does not challenge the presumptive sanctions under the ABA Standards.
Regarding the DeRuiz I sanction, the hearing officer found one mitigating factor (absence of prior disciplinary record) and seven aggravating factors: (1) dishonest or selfish motive, (2) pattern of misconduct, (3) multiple offenses, (4) bad faith obstruction of disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, (5) refusal to acknowledge wrongful nature of conduct, (6) vulnerability of victims, and (7) indifference to making restitution. In particular, the hearing officer found that DeRuiz did not acknowledge or seem to appreciate the wrongful nature of his conduct in dealing with clients or in failing to cooperate with the WSBA's investigations. DeRuiz does not assign error to any of these findings. We treat the findings as verities.
Regarding the DeRuiz II sanction, the hearing officer found no mitigating factors and six aggravating factors: (1) in a prior, pending disciplinary proceeding (DeRuiz I), a hearing officer recommended that DeRuiz be suspended and placed on probation for engaging in misconduct similar to his misconduct in Gorman's case, (2) dishonest and selfish motive, (3) pattern of misconduct, (4) multiple offenses, (5) submission of false evidence, false statements or other deceptive practices during the disciplinary process, and (6) refusal to acknowledge wrongful nature of conduct. As in the previous proceeding, the hearing officer criticized DeRuiz's failure to acknowledge the wrongful nature of his dealings with his client and his steadfast belief that he acted appropriately. The hearing officer also found that DeRuiz was not credible in explaining his failure to appear at Gorman's hearings and failure to provide an accurate statement to the WSBA. DeRuiz does not assign error to any of these findings. We treat these findings as verities.
Based on the above findings in DeRuiz I, the Disciplinary Board voted unanimously to suspend DeRuiz from the practice of law for six months, followed by an 18 month period of probation. Regarding DeRuiz II, the Disciplinary Board voted unanimously to suspend DeRuiz for an additional six months. For each matter, a six-month suspension is the accepted minimum term of suspension. See In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 342, 67 P.3d 1086 (2003) (Cohen I). In Cohen I, we found that [t]he minimum suspension is appropriate in cases where there are both no aggravating factors and at least some mitigating factors, or when the mitigating factors clearly outweigh the aggravating factors. Cohen I, 149 Wash.2d at 339, 67 P.3d 1086. In this case, aggravating factors overwhelmingly outweigh the single mitigating factor of the absence of a disciplinary record prior to DeRuiz I. Although this could justify a period of suspension above the minimum term for each matter, we affirm the recommended sanctions.[5]
The WSBA argues that the recommended suspensions should run consecutively, given the fact that the separate disciplinary proceedings against DeRuiz were merely consolidated in the interests of judicial economy. In Cohen II, we refused to give concurrent suspensions under similar circumstances given the attorneys repeated misconduct. See Cohen II, 150 Wash.2d at 763, 82 P.3d 224. In light of the aggravating factors associated with DeRuizs misconduct, including the repeat nature of his misconduct, we impose the six-month suspensions to run consecutively for a total suspension of one full year.

CONCLUSION
We affirm the Disciplinary Board's recommendation of two six-month suspensions, *894 which are to be served consecutively, with reinstatement subject to payment of restitution and 18 months of probation, conditioned under ELC 13.8(a)(1)(D) requiring professional office practice or management counseling and ELC 13.8(a)(1)(E) requiring periodic audits or reports.
We Concur: ALEXANDER, C.J., MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ.
SANDERS, J. (dissenting).
I agree with the majority that Antony DeRuiz should be suspended for neglecting his clients. However, I believe the two six-month suspensions should run concurrently rather than consecutively.
At oral argument the Washington State Bar Association's (WSBA) attorney admitted the rules do not say whether the suspensions should be consecutive or concurrent. That decision is left to the discretion of this court. Normally, a suspension begins when we issue an order, and multiple suspensions begin to run at the same time when the orders are filed at the same time. Thus, the two six-month suspensions for DeRuiz would run concurrently absent an order to the contrary.
The WSBA recommends consecutive sentences because of multiple aggravating factors and only one mitigating factor and because the two separate disciplinary proceedings were consolidated in the interests of judicial economy. The majority agrees, citing In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 82 P.3d 224 (2004) (Cohen II). In Cohen II, we suspended Cohen a second time for misconduct, having already suspended him for another incident. In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 67 P.3d 1086 (2003) (Cohen I). The facts underlying the second case against Cohen occurred two years after the first incident and after he "had received the WSBA's analysis letter for Cohen I, which delineated the actions which led the WSBA to the conclusion that he had violated the RPC prior to the time that he engaged in the misconduct charged here." Cohen II, 150 Wash.2d at 750, 82 P.3d 224. Cohen's suspensions ran consecutively by court order. Id. at 763, 82 P.3d 224. Here, the facts underlying the two proceedings against DeRuiz occurred over the same period of time, and only three days separated the disciplinary board's orders. The technical distinction of two proceedings does not support consecutive suspensions.
The facts do not warrant a departure from our normal process. I would affirm the two six-month suspensions but would order them to run concurrently.
I dissent.
NOTES
[1] Washington State Bar Association (WSBA) Public No. 02# 00033 went to hearing before the Disciplinary Board on May 16, 2003, and WSBA Public No. 02# 00106 went to hearing on September 26, 2003.
[2] Frederickson gave DeRuiz permission to speak with his mother.
[3] The number "1" preceding a citation to the record (e.g., "1 CP") refers to Public No. 02# 00033 (DeRuiz I). The number "2" preceding a citation to the record (e.g., "2 CP") refers to Public No. 02# 00106 (DeRuiz II).
[4] DeRuiz also argues that McDowell perjured himself in an unrelated matter. See Lawyer's Reply Br. at 18-19. The only relevance of this alleged perjury relates to witness credibility. We should not disturb the hearing officer's findings on the matter.
[5] DeRuiz also challenged the sanctions against him on proportionality grounds by comparing his sanctions to one Washington State Bar News disciplinary notice. However, such a notice provides insufficient support to meet DeRuiz's burden of proof that he received disproportionately severe sanctions. See In re Disciplinary Proceedings Against Cohen, 150 Wash.2d 744, 763, 82 P.3d 224 (2004) (Cohen II).